Don KLUCK, Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 23072.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 28, 2000.

Motion for Rehearing or Transfer
Denied Oct. 19, 2000.

Application for Transfer Denied
Dec. 5, 2000.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

This is an appeal from the denial, after an evidentiary hearing, of a Motion to Vacate, Set Aside or Correct the Judgment or Sentence filed pursuant to Rule 29.15.[1] Don Kluck ("Movant") contends that, because of the ineffectiveness of trial and appellate counsel, he should have been granted relief from his jury conviction for the class A felony of second degree murder, § 565.021, for which he was sentenced, as a prior offender, to life in prison.

The underlying facts of this case were described by this Court when we affirmed Movant's conviction in response to his direct appeal, *State v. Kluck*, 968 S.W.2d 206, 206–07 (Mo.App. S.D.1998). They are:

> ... [Movant] lived in Joplin with his girlfriend, Kelly Drury, and her children, Tiffany and Justin. On the evening of January 20, 1996, Ms. Drury was visiting with some friends in the kitchen of her home when she decided to go to the grocery store to buy some liquor. Ms. Drury went into the bedroom, where [Movant] was sleeping, and got some money out of [Movant's] coat. Around 11:00 P.M. she, her friends, and Tiffany went to the grocery store.

> [Movant] woke up and came into the living room shortly after they returned from the store. Ms. Drury's friends left when [Movant], who apparently walked with crutches, slammed them on the floor. [Movant] then entered the kitchen, and began yelling at Ms. Drury, asking her where his money was. After a thirty-minute argument over the money, [Movant] hit Ms. Drury in the head with a liquor bottle, causing her head to bleed. Ms. Drury's children ran out of the house, but Tiffany went back inside to help her mother bandage her head. Tiffany had gone back outside and was talking to Justin when the children looked in a window and saw [Movant] come out of the bedroom with a gun in his hand. The children then went to the home of a neighbor, John Gabany, and called their father requesting that he pick them up. When Tiffany and Justin later went back home to get their things, Tiffany saw [Movant] sitting on a bed with a gun next to him.

> Later that morning, [Movant] went to Mr. Gabany's house, told him that Ms. Drury had shot herself, and asked him to call an ambulance. Mr. Gabany complied, and the police arrived at [Movant] and Ms. Drury's home shortly thereafter. They found Ms. Drury, who had been shot in the head, lying on the kitchen floor. [Movant], who was in the bedroom when the officers arrived, had blood on his clothing and was carrying a gun in the front of his pants. After the officers arrested [Movant] and read him his *Miranda* rights, he told them, "Kelly shot herself."

1. All rule references are to Missouri Rules of Criminal Procedure (2000) and all statutory references are to RSMo 1994, unless otherwise indicated.

The officers took [Movant] to the Joplin Police Department, where he was interviewed by Detective Greg Helms. Initially, [Movant] told Detective Helms that Ms. Drury had gone to the bedroom, gotten the gun, and shot herself. When Detective Helms told [Movant] he did not believe him, [Movant] told Detective Helms that he handed the gun to Ms. Drury and told her to go ahead and shoot herself, which she did. Again, Detective Helms expressed disbelief, and [Movant] changed his story again, telling Detective Helms that he and Ms. Drury had struggled over the gun, and that she had overpowered him and then shot herself. Detective Helms told [Movant] that he also did not find this story believable, and [Movant] gave his final version of the events in which he said that he and Ms. Drury had been arguing about her drinking. According to [Movant], he pointed his gun at her head, she grabbed his arm, and he shot her.

Review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *Leisure v. State*, 828 S.W.2d 872, 873–74 (Mo. banc 1992), *cert denied*, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). The findings and conclusions of the motion court are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990); *George v. State*, 973 S.W.2d 114, 115 (Mo.App. S.D.1998).

■ To prevail on a claim of ineffective assistance of counsel, a movant must show that the counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *State v. Kelley*, 953 S.W.2d 73, 91 (Mo.App. S.D.1997), *cert.*

*denied*, 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998). Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Movant's first point on appeal is that the motion court clearly erred in denying his Rule 29.15 motion because trial counsel failed to conduct a reasonable investigation and present evidence to support the defense theory of suicide. He says "[a] test of the gun for its gunshot residue characteristics and measurements and forensic analysis of the scene showed that it was more probable that Ms. Drury herself fired the fatal shot, when the only evidence at trial was inconclusive." He maintains that if trial counsel had "investigated and presented this evidence, there is a reasonable probability that the jury would have acquitted [him]."

In his amended Rule 29.15 motion, Movant alleged that:

Movant's trial counsel unreasonably failed to obtain a competent expert in forensic science, crime-scene investigation, and gunshot residue, and further failed to have that expert test the residue deposition characteristics of the alleged murder weapon. With such investigation, the jury would have been presented with additional facts showing a very high probability that [Ms. Drury] had killed herself, resulting in [M]ovant's acquittal.

He further alleged that trial counsel had employed Gene Gietzen ("Mr. Gietzen"), owner of Forsensic Consulting Services, to assess gunshot residue tests conducted on both Movant and Ms. Drury following the shooting. Mr. Gietzen testified at trial that, based on the test results, it was his opinion that the levels of lead, barium and antimony on Ms. Drury "were sufficient

for having discharged, handled or been in close proximity of a recently fired weapon," but that he could not say whether she fired the weapon. He also testified that the test results showing no significant elevated residue being on Ms. Drury's palm did not preclude her from having fired the weapon because the palm could be protected during the firing of the short barreled pistol involved in this case. Mr. Gietzen said that he had seen other situations when a person known to have fired a gun had no increased residue levels on his or her palm, and that it was not scientifically sound to try to draw any conclusions from that fact.

■ In this point, Movant points to evidence presented at the hearing on his motion concerning a test firing of the pistol with which Ms. Drury was shot, and the interpretation of the results of that test as testified to by Don Smith ("Mr. Smith"), a retired criminalist with the Trace Evidence Section of the Arkansas State Crime Laboratory. He portrays that testimony as establishing that the test firing results, when compared to the residue found on Ms. Drury's hand, made it "more probable" that Ms. Drury fired the shot that killed her. In both instances, there were elevated levels of residue on the back of the hand and lower levels on the palm.

A review of Mr. Smith's testimony, however, dilutes the force of Movant's assertion in this regard. Mr. Smith testified that, based on a comparison between the residue patterns after the test firing and those found on Ms. Drury's hand, it was his opinion that "[Ms. Drury] was either in close proximity to a recently discharged weapon, had held a discharged weapon, or had discharged a weapon." He also said that there was no way to say that she did not fire the weapon, and she could not be excluded as having shot the weapon. This testimony was significantly similar to that presented by Movant at trial through the testimony of Mr. Gietzen referred to above.

■ A defendant is not entitled to a perfect trial or to clairvoyant trial counsel. *Nave v. State*, 757 S.W.2d 249, 251 (Mo. App. E.D.1988). A defendant is entitled to an attorney who exercises the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances. *Id.* When a movant claims ineffective assistance of counsel for failure to locate and present expert witnesses, he must show that such experts existed at the time of trial, that they could have been located through reasonable investigation, and that the testimony of these witnesses would have benefited movant's defense. *State v. Colbert*, 949 S.W.2d 932, 945 (Mo.App. W.D.1997).

■ It is not ineffective assistance of counsel to fail to locate and obtain the testimony of an expert who would not necessarily provide a defense in the case. In *Lockhart v. State*, 761 S.W.2d 634, 635 (Mo.App. E.D.1988), movant contended that his trial counsel was ineffective for not locating and presenting the testimony of an expert at a rape trial who would testify that semen from earlier sexual intercourse could still be present in the vagina four days later when the alleged crime occurred. At the evidentiary hearing on the post-conviction motion, movant presented the testimony of a professor of obstetrics and gynecology who testified that there was a fifty-percent chance of sperm being present for four days after ejaculation. *Id.* The appellate court held that "[a]ssuming arguendo" that movant had been able to locate either the expert who testified at the hearing, or some other expert in the field, and that the expert would have testified if called on to do so, movant has not shown that the testimony would have provided him with a viable defense. *Id.* "At best, the expert would have stated that there was a one in two chance that the sperm came from someone other than the movant. Conjecture or speculation is not sufficient to establish the required prejudice flowing from the failure to call a witness to testify." *Id.*

The *Lockhart* case is particularly relevant to the instant case because Mr. Smith did not purport to provide evidence that Ms. Drury fired the gun. Instead, he said that she either fired a weapon, was in close proximity to a weapon when it was fired, or had held a discharged weapon. Actually, this provides only a one in three chance that Ms. Drury shot herself. Under *Lockhart* this does not establish the required prejudice element. Add to this the fact that Movant did, in fact, introduce the testimony of another expert at trial who testified to essentially the same thing leads us to the inescapable conclusion that Movant suffered no prejudice as a result of the failure to call another expert on the issue of whether the gunpowder residue on Ms. Drury's hand established that she shot herself. This portion of the point is without merit.

■ Mr. Smith also reviewed measurements of the room where Ms. Drury was found, the path of the bullet that passed through her, the absence of blood on two walls of the room, the autopsy report, and photographs of Ms. Drury's body. From this information, he concluded that the wound in her head was a "contact wound," meaning that it was fired from "close proximity, within a fraction of an inch, or actual muzzle contact." He also recreated the path of the bullet through Ms. Drury's head. Mr. Smith concluded that, based on the physical facts, including the size of the room and the location where he hypothesized that Ms. Drury was standing, it would have been "very awkward" for someone to be able to position himself and fire the gun from the side of Mrs. Drury's head where the entrance wound appeared, but that it could have been done by someone standing in a chair. From all of this, Mr. Smith concluded that for someone else to have shot Ms. Drury, such person would have had to be left handed, and that "it's more probable that nobody else shot [Ms. Drury], that in fact she inflicted the wound." He also said that it would be "difficult" for anyone else to have shot Ms.

Drury, but that "I wouldn't say that it's impossible, but it's certainly not as probable that [Ms. Drury] inflicted her own."

■ We are unable to conclude that trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances by not locating and presenting testimony like that given by Mr. Smith at the evidentiary hearing. Even if trial counsel had located Mr. Smith or another expert willing to testify that, from the physical facts, it was improbable that someone else shot her, or that it would have been "difficult" for someone else to have shot her, we are unable to conclude that there is a reasonable probability that the result would have been different. In this regard, it is appropriate to consider the strength of the other evidence against Movant in considering any prejudice that may have inured to Movant as a result of trial counsel's alleged ineffective representation. *State v. Hopkins*, 918 S.W.2d 350, 353 (Mo.App. W.D.1996). The fact that an error by counsel might have had some conceivable effect on the outcome is not sufficient. *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App. E.D. 1986). "Rather, movant, when challenging a conviction, must show there is a reasonable probability that, absent the alleged error, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 915–16. In considering whether a reasonable probability exists, the motion court must consider the *totality* of the evidence. *Id.* at 916.

In the instant case, Movant had exhibited violence toward Ms. Drury earlier in the evening; Movant was seen with the gun in the house before the shooting; while Movant said after the incident, that Ms. Drury had shot herself, he had the weapon tucked in the front of his pants; and he gave several varying stories to the police after his arrest, the last one of which was that he had put the gun next to her head while she was sitting in the kitchen, she grabbed his arm, and the gun

discharged. The evidence was sufficiently strong against Movant, that we cannot say that even if the evidence relating to the physical layout of the kitchen and Ms. Drury's location had been presented, that there is a reasonable probability that the outcome would have been different. This is especially true considering the fact that Movant admitted having gone to Ms. Drury, while she was sitting in a chair, and placing the gun against her head. This is the very thing that Movant now says that trial counsel should have tried to disprove. Counsel's failure to attempt to disprove the admission of Movant can hardly be said to be ineffective assistance of counsel which prejudiced Movant under the circumstances of this case. The motion court was not clearly erroneous in denying Movant relief on the basis argued in the first point. It is, therefore, denied.

Movant next asserts that the motion court clearly erred in denying his Rule 29.15 motion because trial counsel failed to offer a lesser included offense instruction for involuntary manslaughter. He argues that there was evidence to support such an instruction because of his statement to the police that the gun discharged accidentally when Ms. Drury grabbed his arm.

In evaluating the performance of counsel, we note that the actions of counsel that constitute sound trial strategy are not grounds for ineffective assistance claims. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998), *cert. denied*, 526 U.S. 1151, 119 S.Ct. 2034, 143 L.Ed.2d 1043 (1999). In this regard, there is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment. *Id.* In the instant case, the motion court found that the failure to request an involuntary manslaughter instruction could have been trial strategy.

The fact that the failure to request the involuntary manslaughter instruction was trial strategy is indicated by the testimony of trial counsel at the evidentiary hearing. He testified that such an instruction would have been inconsistent with their contention that Ms. Drury's death was a suicide. He said that Movant "told me he wanted to go all or nothing." Where a lesser included offense instruction is inconsistent with the defense asserted at trial, it is not ineffective assistance of counsel to fail to request such an instruction. *Hackney v. State*, 778 S.W.2d 776, 778 (Mo.App. E.D.1989). *See also State v. Theus*, 967 S.W.2d 234, 242 (Mo.App. W.D. 1998). Movant's second point is denied.

In his third, and final, point, Movant contends that the motion court clearly erred in denying his Rule 29.15 motion because appellate counsel failed to raise as an issue on direct appeal the trial court's refusal to admit evidence that Ms. Drury had a blood alcohol level of 0.18% and also had Valium in her blood. He argues that such evidence would have made it more likely that the jury would have accepted his contention that Ms. Drury committed suicide. In fact, Movant characterizes this evidence as a "dead bang winner."

In order to prevail on a claim of ineffectiveness of appellate counsel, there must be strong grounds showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective attorney would have recognized and asserted it. *Ham v. State*, 7 S.W.3d 433, 440–41 (Mo.App. W.D.1999). The right to relief due to ineffective assistance of appellate counsel "inevitably tracks the plain error rule; *i.e.*, the error that was not raised on appeal was so substantial as to amount to manifest injustice or a miscarriage of justice." *Moss v. State*, 10 S.W.3d 508, 514–15 (Mo. banc 2000) (quoting from *Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994), *cert. denied*, 514 U.S. 1119, 115 S.Ct. 1982, 131 L.Ed.2d 869 (1995)).

It must be remembered that the trial courts have broad discretion in deter-

mining the admissibility of evidence and will only be reversed when that discretion is abused and the abuse of discretion resulted in prejudice to a defendant. *State v. Jacoway,* 11 S.W.3d 793, 796 (Mo.App. W.D.1999). In this case, Movant's attorney, in cross-examining the director of the regional crime lab, inquired about the results of blood tests performed on Ms. Drury. In response to an objection from the State, he argued that the test results would go to her state of mind at the time of the shooting, and would permit the jury to draw their own conclusions about "what influences she was under at the time of the shooting." In sustaining the State's objection, the trial court stated, among other things, that it had concerns about the relevancy of the evidence to the issue of whether or not Movant shot Ms. Drury. It also noted that there was evidence already in the case that she and Movant were drinking, and that Ms. Drury was intoxicated. Movant's trial attorney then made an offer of proof concerning the contents of Ms. Drury's blood and urine following the shooting, during which the witness said that the blood showed caffeine, Valium, and approximately .18% alcohol.

In *Jacoway,* there was an issue about whether the trial court erred in rejecting evidence that the decedent had a blood alcohol content of .186%. The defendant contended that the evidence was relevant to whether he (the defendant) acted under the influence of sudden passion caused by the actions of the intoxicated decedent. The appellate court held that it was not error to refuse the evidence, noting that trial courts have broad discretion regarding the admissibility of evidence. 11 S.W.3d at 796. The reason they are given such broad discretion to exclude marginally relevant evidence is "because of concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant." *Id.* The court said that evidence of the decedent's blood alcohol content would directly show only that he was intoxicated, which does not necessarily mean that he was violent. *Id.* at 797.

In this case, Movant argues that the evidence was important "to the defense of suicide because it could have shown Ms. Drury to be despondent." He concludes that if the issue had been argued on the direct appeal, "this Court would surely have remanded the case for a new trial." This argument ignores, however, the discretion vested in the trial court concerning the admissibility of evidence. Here, we are unable to conclude that this issue would have required a reversal. This is especially true, considering the fact that other evidence before the jury indicated that Ms. Drury had been drinking and appeared to be intoxicated before she died. As in *Jacoway,* the evidence of Ms. Drury's blood content "could reasonably be considered cumulative and of marginal relevance." *Id.* at 797. The motion court was not clearly erroneous in denying this claim for relief. This point is denied.

We affirm the denial of Movant's post-conviction motion.

PREWITT, J., and CROW, J., concur.