**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robert C. UMFRESS, II, Defendant–Appellant.**

No. 23594.

Missouri Court of Appeals, Southern District, Division Two.

May 31, 2001.

Motion for Rehearing or Transfer Denied June 21, 2001.

Application for Transfer Denied Aug. 21, 2001.

Kent Denzel, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, for Respondent.

GARRISON, Judge.

Robert C. Umfress, II ("Defendant") was charged with one count of robbery in the first degree in violation of Section 569.020 [1] and one count of armed criminal action in violation of Section 571.015. A jury found him guilty of robbery in the first degree, and he was sentenced to ten years imprisonment. Defendant appeals.

As Defendant contests the sufficiency of the evidence supporting his conviction, appellate "review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). In applying this standard, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence to the contrary. *Id.* Viewed in this light, the evidence most favorable to the verdict shows:

On February 10, 1999, Defendant told one of his roommates, Patricia Blanks ("Blanks"), that he planned to "knock off Gas Plus," a gas station in Houston, Missouri. Later that evening, Defendant left the apartment wearing a dark-colored trench coat. Defendant and two other men, John Cook ("Cook") and Jerry Price ("Price"), drove into the Gas Plus station in a yellow pickup truck and purchased two dollars worth of gas. After buying the gas, they asked the station attendant, Chester Smith ("Smith"), where they could find work, and then they left.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

At approximately 7:30 p.m., Defendant told Cook and Price to drop him off near the Gas Plus station. Defendant asked them to return in twenty to twenty-five minutes to pick him up, and he left the truck. Defendant walked to the Gas Plus station and approached Smith. Smith was sitting inside reading the paper. No one else was in the station. When Smith noticed that someone was standing there, he looked up from the paper and asked Defendant, who was wearing an army-type trench coat, if he could help him. Defendant said, "Yes, you may," and told Smith, "I'm a desperate man." "Give me that money, that wallet you've got there in your back pocket." Gas Plus was a full-service station, and Smith pumped gas for the customers and put the payments into a large black trucker's wallet that he carried. The wallet was attached to a chain that was connected to Smith's belt loop.

Smith was scared, and asked Defendant if he wanted the wallet or just the money. Defendant told Smith to "[g]ive me all of it." Smith took out the wallet, handed it to Defendant, and asked him, "You ain't going to shoot me or hurt me, are you?" Defendant immediately produced a dark-colored gun, which Smith thought looked like a .45 caliber. Defendant told Smith to be quiet and nobody would get hurt. Defendant then backed out of the station and left around the corner of the building down an alley.

Defendant walked to Brushy Creek Road, where Cook and Price picked him up. Defendant was still wearing the trench coat when he got back into the truck. Defendant admitted to Cook and Price that he had robbed the Gas Plus station and that he had told Smith that he was a "desperate man." Defendant then began throwing items out of the truck window while they were driving down Brushy Creek Road. At some point, Defen-

dant returned to his apartment and told Blanks that he had committed the robbery and that he was going to a motel in Cabool, Missouri.

Moments after Defendant had robbed the Gas Plus station, Smith called the police to report the robbery. Within fifteen minutes after the police arrived, Smith, who had had two previous open-heart surgeries, began suffering chest pains. An ambulance was called, and Smith was admitted to a local hospital. He was later transferred to a hospital in Springfield, Missouri, where he stayed for about a week after it was determined that he had suffered a heart attack.

After Defendant's arrest, he was interviewed on February 11, 1999, by Houston police officer Danny Dunn ("Officer Dunn"). Defendant told Officer Dunn that he and Cook had planned to rob the Gas Plus station, but that when it came time to commit the robbery, Cook "did not have the . . . to do it." Defendant then did it himself. Defendant also gave a written statement to Officer Dunn in which he confessed to committing the crime.

The Houston police interviewed Smith when he returned home from the hospital. He was shown a photo array, and identified Defendant as the robber. Smith also identified the wallet that Defendant took during the robbery. The police had recovered the wallet along Brushy Creek Road.

In September 1999, while awaiting trial, Defendant sent Smith a signed letter admitting to the robbery and asking Smith for forgiveness. Defendant apologized for committing "a horrible act of violence I feel deeply sorry for."

During the trial, Smith identified Defendant as the lone robber. Smith also identified both the wallet the police had found and a picture of a yellow pickup truck as the one that Defendant, Cook, and Price

were riding in when it pulled into the Gas Plus station on the night of the robbery. Defendant presented no evidence at trial.

The jury found Defendant guilty of robbery in the first degree, but not guilty of armed criminal action, and he was sentenced to ten years. The trial court overruled Defendant's motions for judgment of acquittal and for a new trial. This appeal followed.

■ In his first point on appeal, Defendant argues that the trial court erred in overruling his motion for judgment of acquittal, in accepting the jury's verdict of guilty, and in sentencing him for that offense because the State failed to prove the offense charged beyond a reasonable doubt since it did not produce sufficient evidence to allow a jury to reach a subjective state of near certitude that "in the course of *taking* the property [Defendant] displayed or threatened use of what appeared to be a dangerous instrument."

Defendant was charged in the information with robbery in the first degree in that he "forcibly stole property ... from [Smith] at his place of employment ... by using or threatening the immediate use of a dangerous instrument, a hand gun, against [Smith]." The verdict director for the charge of first degree robbery, which was patterned after MAI–CR 3d 323.02, required that the jury find:

First, that on or about February 10, 1999 in Houston County of Texas, State of Missouri, [Defendant] took property consisting of a wallet and money, which was property owned by Hocker Oil Co. and [Smith] in the possession of [Smith], and

Second, that [Defendant] did so for the purpose of withholding it from the owner permanently, and

Third, that [Defendant] in doing so threatened the immediate use of phys-

ical force on or against [Smith] for the purpose of preventing resistance to the keeping of the property immediately after the taking, and

Fourth, that in the course of taking the property, [Defendant] displayed or threatened use of what appeared to be a dangerous instrument, then you will find [Defendant] guilty under Count I of robbery in the first degree.

Section 569.020.1 sets out the elements of robbery in the first degree:

A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

Section 569.010.1 defines "forcibly steals" as when in the course of stealing, as defined in Section 570.030, a person "uses or threatens the immediate use of physical force upon another person for the purpose of: (a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft."

Defendant contends that the evidence, at most, showed that he requested Smith's wallet and money and in the course of taking it, displayed no dangerous instrument and made no threats. He argues that "[i]f a dangerous instrument was displayed at any time, it was only after the taking was complete, as [Defendant] was

on the way out of the gas station," and the State did not submit to the jury as an element of the offense that Defendant displayed a dangerous instrument to overcome resistance to his retention of the property.

In a similar case, *State v. Cates*, 854 S.W.2d 17, 18–19 (Mo.App. W.D.1993), the defendant, who was charged with robbery, argued that there was "insufficient evidence to support the verdict in that there was no evidence that he used physical force in preventing *resistance to the taking*, as opposed to resistance to the retention, of the property." In *Cates*, the defendant began placing items inside his shirt and jacket while he was in a K–Mart store. The defendant then proceeded to leave the store without paying for the items. A K–Mart security officer stopped the defendant just outside of the store's front doors and asked him to come back inside the store. The defendant tried to leave, and the security officer pulled him back and pointed to a pair of shoes that the defendant had hidden in his jacket. The defendant struggled with the security officer, as she attempted to steer the defendant back into the store. He shoved the security officer to the ground and hit her arm in an attempt to knock her hand off of his jacket. The defendant broke free from the security officer's grasp and ran from the store. *Id.* at 18.

The *Cates* court rejected the defendant's argument that he did not use physical force in preventing resistance to the taking, as opposed to resistance to the retention, of the property. *Id.* at 19. The court held that the word "taking" is not limited to such a narrow construction that it is complete when the offender exercises dominion and control over the object inconsistent with the true owner's rights. *Id.* The court stated:

> While the evidence is sufficient to support a finding of appropriation at the moment an offender wrongfully assumes complete dominion over the property of another inconsistent with the owner's rights, it is inaccurate to refer to this as a "complete taking." The issue of "taking" is relevant only to the extent that it shows an appropriation. Thus, we believe that the word "taking," as used in MAI–CR3d 323.04 refers to the general use of that word and not some term of art no longer relevant to the construction of the statute.

*Id.* The court then went on to look at the dictionary definition of the word "take" and noted that it included not only "to seize" and "to capture" but "to remove . . . to carry or transport" as in "to take a book with one." *Id.* The court concluded that the evidence was sufficient to find that the defendant "was still in the act of taking, removing and carrying the property from K–Mart, at the time that he struck [the security officer] and knocked her off balance." *Id.*

The evidence in this case, like in *Cates*, shows that Defendant was still in the course of taking the property. Here, Defendant displayed or threatened the use of a dangerous instrument in the course of taking Smith's wallet. Defendant entered the Gas Plus station and told Smith that he was a "desperate man." Defendant told Smith, "Give me that money, that wallet you've got there in your back pocket." The record shows that nearly contemporaneously with the giving of the wallet, Smith, who was scared, asked Defendant whether he was going to shoot or hurt him. Defendant, who was still inside the station, immediately produced a gun and told Smith to be quiet and no one would get hurt. After producing the gun, Defendant then slowly backed out of the station. This evidence was sufficient to find that Defendant was in the act of taking the wallet at the time that he displayed the gun. Therefore, this point must be denied.

■ In his second point, Defendant contends that the trial court erred in allowing the State to elicit from Smith that he suffered a heart attack shortly after the robbery. Defendant argues that the "fact of [Smith's] heart attack had little, if any, probative value" and that "there was no need to present the evidence of chest pains or a heart attack other than to seek sympathy from the jury."

During the trial, Smith testified that about fifteen or twenty minutes after the police arrived, he started having chest pains. Defendant objected, based on his pretrial motion in limine that the evidence of Smith's medical condition was irrelevant and prejudicial. This objection was overruled. Smith went on to testify that the police called an ambulance for him, and that he had suffered a heart attack and was in the hospital for six or seven days.

■ Trial courts have broad discretion in determining the admissibility of evidence. *State v. Johns*, 34 S.W.3d 93, 111 (Mo. banc 2000); *Kluck v. State*, 30 S.W.3d 872, 878–79 (Mo.App. S.D.2000). Error will be found only if this discretion was clearly abused. *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999), *cert. denied*, 528 U.S. 1054, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999). A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Johns*, 34 S.W.3d at 111.

■ In the instant case, the trial court did not abuse its discretion in admitting into evidence Smith's testimony concerning his heart attack and subsequent hospitalization. The evidence of Smith's heart attack was relevant to show why the police delayed in showing Smith the photo lineup from which he identified Defendant as the robber. Further, even if the trial court

had erred in admitting the testimony of Smith regarding his heart attack and subsequent hospitalization, it would have been harmless error in light of the overwhelming evidence of Defendant's guilt. *See State v. Roberts*, 838 S.W.2d 126, 131 (Mo. App. E.D.1992) ("Error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong"). Smith positively identified Defendant in a photo lineup and at trial as the robber. Defendant confessed to numerous people that he committed the robbery, including preparing a written statement for the police and sending a letter to Smith from jail asking for forgiveness for committing the crime. This point is therefore denied.

The judgment of the trial court is affirmed.

PREWITT and RAHMEYER, JJ., concur.