**Tony L. MANN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 28273.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 16, 2008.

Motion for Rehearing or Transfer
Denied Feb. 7, 2008.

Application for Transfer Denied
March 18, 2008.

Elizabeth Unger Carlyle, Columbus, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

Before BARNEY, P.J., RAHMEYER, J., and LYNCH, C.J.

PER CURIAM.

Appellant Tony L. Mann ("Movant") appeals the motion court's denial following an evidentiary hearing of his Rule 29.15 motion.[1] Movant asserts six points of motion court error. We affirm the findings of fact and conclusions of law of the motion court.

The record reveals Movant was charged by Felony Information with one count of the Class A felony of assault of a law enforcement officer in the first degree, a violation of section 565.081.1, and one count of the unclassified felony of armed criminal action, a violation of section 571.015.

A bench trial was held on August 19, 2002.[2] The following evidence was adduced at trial.[3]

On the evening of October 4, 2001, several Springfield police officers were positioned outside of Movant's home in an

---

1. All Rule references are to Missouri Court Rules (2007) and all statutory references are to RSMo 2000.

2. Movant waived his right to a jury trial on the morning of trial.

3. In this opinion we shall recite only those facts necessary to discuss Movant's postconviction claims. For a full recitation of the facts relating to the underlying charges against Movant, see *State v. Mann*, 129 S.W.3d 462 (Mo.App.2004), in which Movant's underlying convictions were affirmed on direct appeal to this Court.

unmarked police car conducting surveillance on Movant. While the officers were outside his home, Movant erratically drove a motorized scooter past the officers and began to swerve the scooter into oncoming traffic. The officers attempted a traffic stop of Movant; however, Movant evaded the officers. Moments later the officers encountered Movant again, but Movant had discarded his motorized scooter in favor of a bicycle. The officers again attempted to stop Movant and Movant eluded them by riding his bicycle between two houses, thus, disappearing from their view.

Officer David Shanholtzer ("Officer Shanholtzer") left his patrol vehicle and followed Movant on foot with his flashlight in hand. Officer Shanholtzer saw Movant in the backyard of a home where Movant was standing next to a fence. Officer Shanholtzer was unable to see Movant's hands and he yelled to Movant to show his hands. When Movant raised his hands, he had a gun and he fired a shot at Officer Shanholtzer.[4] Officer Shanholtzer took cover behind a shed, drew his own gun, and called for back-up. The other officers arrived and when they looked out from behind the shed, Movant was gone. The officers retreated to their vehicle and awaited assistance in locating Movant.

Shortly thereafter an officer with a canine arrived at the scene and was able to track Movant's scent back to his residence a short distance away. Police officers deployed gas into Movant's home and he emerged several minutes later at which time he was arrested.

At the close of all the evidence, the trial court found Movant guilty of the crimes charged in the Felony Information. Movant was sentenced to life in prison for assault of a law enforcement officer in the first degree and 10 years for armed criminal action, with the sentences to run concurrently to each other and to a federal offense Appellant was already serving.

Movant filed his *pro se* Rule 29.15 motion on July 12, 2004. He was appointed counsel and an Amended Motion to Vacate, Set Aside or Correct Sentence and Judgment was filed on October 8, 2004.

A motion hearing on Movant's motion was held on September 14, 2006. Following the hearing, the motion court denied Movant's request for Rule 29.15 postconviction relief. This appeal by Movant followed.

Appellate review of a motion court's ruling on a Rule 29.15 motion for postconviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law issued in support thereof are clearly erroneous. Rule 29.15(k); *see Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000). The findings of the motion court are presumptively valid. *Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made." *State v. Taylor,* 944 S.W.2d 925, 938 (Mo. banc 1997).

To prevail on a claim of ineffective assistance of counsel, Movant must establish by

---

**4.** Movant asserted at trial that he was "scared" and "in a real panic" when he was fleeing from the officers. He testified he had a gun in the "tool pouch" of his bike, which he was not supposed to have because he is a convicted felon, and he took "the pistol out of the bag and fire[d] it skyward ... to get a little distance ..." from the officers pursuing him. Movant informed the trial court he "wasn't trying to hurt anyone" and did not intend to injure Officer Shanholtzer, but he admitted he did fire the gun "in the proximity" of a police officer. He also admitted he had indulged in methamphetamine prior to the incident.

a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). To satisfy the performance prong, Movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Simmons*, 955 S.W.2d at 746. Prejudice exists where there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness. *Id.* If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and Movant's claim of ineffective assistance of counsel must fail. *Id.*

In his first point relied on Movant maintains the motion court erred in finding Movant received effective assistance of counsel in that his trial counsel "failed to investigate the crime scene and consult with and call as a witness a crime scene investigator." He asserts that "[h]ad such a witness been retained and called, there is a reasonable probability that the outcome of the trial would have been different."

■ "When a movant claims ineffective assistance of counsel for failure to locate and present expert witnesses, he must show that such experts existed at the time of trial, that they could have been located through reasonable investigation, and that the testimony of these witnesses would have benefited movant's defense." *Kluck v. State*, 30 S.W.3d 872, 876 (Mo. App.2000). "It is not ineffective assistance of counsel to fail to locate and obtain the testimony of an expert who would not necessarily provide a defense in the case." *Id.*

■ The selection of witnesses and the introduction of evidence are questions of trial strategy. *Helmig v. State*, 42 S.W.3d 658, 667 (Mo.App.2001). " 'This is because strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " *Id.* (quoting *State v. Harris*, 870 S.W.2d 798, 816–17 (Mo. banc 1994)). "Allegations of ineffective assistance of counsel relating to matters of trial strategy do not provide a basis for post-conviction relief for counsel is allowed wide latitude in conducting the defense and is entitled to use his or her best judgment in matters of trial strategy." *State v. Borders*, 844 S.W.2d 49, 54 (Mo.App.1992) (internal citation omitted).

At the evidentiary hearing Gene Gietzen ("Mr. Gietzen"), a forensic scientist, testified that he was not contacted by Movant's trial counsel, Bruce Galloway ("trial counsel"), to investigate the crime scene at the time of trial. He related that he is called, usually, to do such crime scene investigations "as quickly as possible" after the crime occurs so that he is able to see the scene "in the same or similar condition as it was ..." at the time of the crime. He related that in the present matter he did his investigation at the request of Movant's postconviction counsel "about three years after the actual events had occurred." He stated he was able "to look at the scene" where Movant shot at Officer Shanholtzer but he could not "reconstruct it [because] it was not in the same or similar condition as it was in 2001." He stated he could not determine whether any of the structures may have been grazed by a bullet because of the passage of time. He related that had he been able to examine the area immediately after the crime he *possibly* could have been able to more accurately

assess the scene and *possibly* locate a spent shell casing or other evidence. He stated he reviewed a videotape of the crime scene introduced at trial which was taken about nine months after the crime. He opined there would have been significant changes in the scene between the crime in October and the videotape in July due to the changes in seasons and foliage growth. Mr. Gietzen also testified that because of the passage of time he would be unable at this point to properly analyze the crime scene at issue.

Movant testified trial counsel visited him at the hospital on the evening he was arrested and spoke with him again the next day after he was in jail. Movant told trial counsel at that time that he had fired into the air as opposed to firing at Officer Shanholtzer and they discussed "having an investigation done about the scene...." He stated he and trial counsel discussed "a crime scene investigator that [trial counsel] used" named Jim Miller ("Mr. Miller").[5] Movant stated trial counsel did not share with him his theory of the case and he thought they were going to use a crime scene investigator.

Trial counsel testified at the hearing that he personally "inspect[ed] the scene of the offense," interviewed the neighbors, and took depositions relating to the present matter. He stated he did not hire a crime scene investigator or other expert witness because he "looked at the scene [him]self...." He stated he personally interviewed the person who owned the home where the offense occurred and he felt "[i]t was not necessary" to hire an expert crime scene investigator. He related that he felt "the reason why an expert would not be material to the defense ... has to do with this larger issue of how much did [the defense] want to focus the jurors' attention on the exact sequence of events at the time of the shooting."

Defense Counsel also testified his trial strategy was that Movant did not intend to injure Officer Shanholtzer and he hoped at trial "to focus on the testimony of the officers and the speed at which they probably approached [Movant], which would be consistent with [him] trying to get out of there, he's fired a shot, he's going to get away." He stated that he did not want to focus on the fact that while he is trying to get away Movant is "pausing, unzipping, pulling the gun out, and then firing the gun in the direction of the officer." He explained that he "was afraid that if [they] got tied up in the details ... and the mechanics of the shooting, then [they] were going to have a problem."

While Mr. Gietzen testified that if he had been called to investigate the scene of the crime he *possibly* would have been able to make determinations relating to the trajectory of the bullet fired by Movant, and *might* have been able to find a spent shell casing, it is clear that he offered no concrete evidence showing anything helpful to Movant's defense. He presented no evidence that had he been able to visit the scene at the time of the crime that he would have actually produced any probative evidence helpful to Movant. He merely listed things he could have looked for. Conjecture or speculation is not sufficient to establish the required prejudice flowing from the failure to call a forensic scientist during the course of Movant's trial. *Kluck*, 30 S.W.3d

---

5. Trial counsel testified at the motion hearing that he had hired Mr. Miller relative to Movant's previous charge of assaulting a law enforcement officer, but he did not recall telling Movant they would again consult with Mr. Miller in relation to the present matter. He stated the only actions Mr. Miller took in relation to this case was that he went to the jail after Movant was arrested and took pictures of Movant's injuries.

at 876. Movant failed to show that expert testimony "would have benefited [his] defense." *Id.*

■ Further, trial counsel testified that his decision not to call an expert witness and go into a detailed discussion of the scene was consistent with his overall theory of the case, that Movant was fleeing at the time the shot was fired and he did not want to call attention to the specific sequence of events prior to the discharge of the gun. Additionally, trial counsel, as an experienced trial attorney, examined the scene of the crime, interviewed the owner of the home where the incident occurred, and searched for bullet marks on trees and homes in the surrounding area. It is our view that he took adequate and reasonable steps to determine that an expert was not necessary. "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006). As previously related, the selection of witnesses and the introduction of evidence are questions of trial strategy, *Helmig,* 42 S.W.3d at 667, and trial counsel acted reasonably under the circumstances. Point One is denied.

In his second point relied on Movant maintains the motion court erred in finding Movant received effective assistance of counsel in that "trial counsel recommended that [Movant] waive his right ... to trial by jury." Movant asserts "[n]o reasonable strategic reason existed for waiving this fundamental constitutional right" and "[d]enial of the fundamental right to a jury was prejudicial to [Movant]."

Prior to the bench trial in this case, Movant chose to waive his right to a jury trial. The trial court examined Movant about his desire to waive his right to a jury trial. Movant assured the trial court he: understood the charges against him; had

been in communication with trial counsel about this decision; understood the effects of such a waiver; and desired to waive his right to a trial by jury.

At the evidentiary hearing, Movant testified trial counsel had told him several times that certain decisions were for Movant to make because "this is [his] trial ... it's what [Movant] want[s] to do." He stated he told trial counsel that he thought they should have a jury trial and not a bench trial, but trial counsel is the "professional" that makes those types of decisions "every day for a living." He related he asked him what he would do in Movant's situation and he responded he would "go to a bench trial." Movant admitted that when he was asked by the trial court on the day of trial about waiving his right to a jury trial he agreed to waive the jury trial "[b]ased on [trial counsel's] advice...."

Trial counsel testified he brought up the idea to Movant about waiving his right to a jury trial and proceeding with a bench trial. He stated he believed he first raised the issue with Movant "on the day of trial." He stated he prepared a motion to waive jury trial prior to speaking with Movant that morning. Trial counsel testified he had two reasons for raising the issue with Movant,

> but the primary reason is that [the] jury trial case had developed a major problem immediately before trial. April Mann was [Movant's] wife. April had given a statement to the police that was unhelpful to [the] defense.

> [The] defense was that [Movant] did not intend to shoot at the law enforcement officer. That [was the] theory. The theme was that this is an overreaction to what he actually did, which [the] theory was that he was shooting to get some distance between him and the officers.

The intent was [the] entire issue to the jury.

Ms. Mann [was] brought to the table for the State intent. She had told the police that [Movant] made a statement . . . that he basically wanted to have it out with the police and go out in a blaze of glory. . . .

Also, there was some evidence that April had been abused that day and then that April could testify to a jury perhaps . . . it's hard to know where the prior acts evidence would begin and end—to methamphetamine use and production. She had told [trial counsel] . . . that [Movant] was producing methamphetamine in his home with a friend, that she had confronted him, and that that created a dispute between them. . . .

The bottom line is . . . that she was going to suck away [Movant's] jury appeal . . . and [trial counsel] was deeply concerned that [the matter would] . . . proceed to jury trial, find April Mann there testifying, and then April would be supplying the one element that [the State] needed legally, which was intent, and another element, which is emotional appeal. . . .

Additionally, he related he personally spoke to April Mann the evening before trial for a period of two hours and she had indicated to him in person that she was going to testify for the State. Trial counsel testified that with the possibility of April Mann testifying he felt the best scenario would be to avoid a jury trial. He stated "strategically" if April testified he would not want the jury to be in charge of sentencing Movant. He related that such things are "all speculative," but he felt if they "had a bench trial and [they] tried this thing antiseptically . . . where [they] wouldn't have any emotions brought out, then perhaps Judge Westbrook would give [Movant] a lesser punishment than a jury."

He stated he felt that a "bench trial might be a way of reducing consequences and reducing the potentially bad outcome." He also stated that Movant had told him "he wanted to [have a bench trial]" when they discussed the issue prior to trial. Trial counsel also testified that the decision to waive a jury trial is always the client's decision. He stated his role in such a decision is to counsel and advise his client and advise him based on his expertise "as an experienced trial attorney."

■■■ In determining whether trial counsel's advice to waive a jury trial was reasonable trial strategy, such decisions may "depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052. It is our view that "[t]he decision to waive a jury trial in this case was a matter of trial strategy and consequently does not provide a basis for [postconviction] relief." *Smith v. State*, 837 S.W.2d 25, 28 (Mo.App. 1992); *see Dorsey v. State*, 113 S.W.3d 311, 315 (Mo.App.2003). While Movant testified trial counsel never talked to him about April Mann possibly testifying, the motion court is the judge of the credibility of witnesses and it was free to believe trial counsel's testimony over that of Movant. *Helmig*, 42 S.W.3d at 673. Movant did not carry his burden of proving trial counsel was ineffective for advising him to waive his right to a jury trial. Point Two is denied.

In his third point relied on Movant asserts the motion court erred in finding Movant received effective assistance of counsel "when trial counsel failed to move for a change of venue" because "[t]he case was the subject of considerable publicity favoring the police." He maintains if such a motion had been made "there is a reasonable probability that the outcome of the trial would have been different."

At the motion hearing, Movant testified he had asked trial counsel several times about changing the venue for the trial and was informed by him that "he didn't think it was a good idea." Movant testified he "really didn't give much of a reason at that time."

Trial counsel testified Movant's case was the "subject of some publicity in the Springfield area" and he identified several articles from the local paper regarding Movant's case. He stated that in addition to the newspaper articles there was radio and television publicity which mentioned the fact that Movant had other pending criminal charges against him. He stated his office "tracked the publicity pretty— pretty thoroughly. [He] had to obtain the videotapes of the television coverage, followed the newspaper accounts. . . ."

■ Trial counsel also related there was a great deal of coverage relating to the fact that the police may have used excessive force in arresting Movant; indeed, one of his theories in the case was that the police overreacted to the incident involving Officer Shanholtzer. As such, trial counsel testified that he felt that if jurors "were going to take into the courtroom . . ." what they had heard about Movant, it would be that "a man in a towel got beat and had an attack dog put on him," and not the fact that Movant had other charges pending against him.

It is our view that Movant's point fails because Movant has not proven that but for trial counsel's failure to request a change of venue, the result of the bench trial would have been different. *See Matthews v. State*, 175 S.W.3d 110, 114 (Mo. banc 2005). Certainly, in the context of a postconviction relief action there is no presumption of prejudice resulting from any failure by trial counsel to seek a change of venue.

*Strickland* and its progeny only recognize three types of cases in which prejudice normally may be presumed: (1) where there has been an actual or constructive denial of the right to counsel altogether; (2) where the [S]tate has affirmatively interfered with counsel's representation; and (3) where counsel's representation is impeded by an actual conflict of interest.

*Id.*

Furthermore, trial counsel testified he was aware of the pretrial publicity, had kept track of Movant's case as it was reported by the media, and had even obtained copies of local television news reports. "[T]he mere existence of pretrial publicity does not automatically require a change of venue." *Milner v. State*, 968 S.W.2d 229, 231 (Mo.App.1998). "A decision not to seek a change of venue demonstrates no incompetence by counsel unless it is manifestly wrong." *Id.* That does not appear to be the case in the present matter. Here, the case was tried to the court and not to a jury. Movant does not claim the trial court was aware of the pretrial publicity or was influenced by it, and this Court finds nothing in the record to support such a conclusion. The motion court did not err in denying Movant's claim for ineffective assistance of counsel relating to trial counsel's failure to request a change of venue. Point Three is denied.

In his fourth point relied on Movant maintains the motion court erred in finding Movant received effective assistance of counsel in that his trial counsel "failed to support his objection to the 'crime scene video,' presented by the State at trial with evidence that the scene at the time of the incident was substantially different than it was when the video was taken." He asserts that such evidence would have created a "reasonable proba-

bility that the outcome of the trial would have been different."

At the trial in this matter, during its direct examination of Officer Shanholtzer, the State moved to introduce a videotape of the crime scene which was taken approximately nine months after the crime. Trial counsel objected to the introduction of the videotape and asked to *voir dire* Officer Shanholtzer about whether the videotape was "a fair and accurate representation of the [crime scene]." During this cross-examination, Officer Shanholtzer testified he had no recollection as to the type of plants at the scene; he could not recall whether a certain bush had been replaced since the time of the crime; and he had no knowledge if plants had been in bloom at the time of the crime. He ultimately opined that overall the video was consistent with the scene at the time of the crime. Trial counsel renewed his objection to the videotape and stated, "I think the Court can understand my point in that the vegetation would have had to have been different and, in fact, was testified that way by the officer." The trial court overruled his objection and the videotape was admitted into evidence.

At the motion hearing, trial counsel testified he objected to the videotape, but "[f]rom the point of view of supporting that objection, [he] did not consider calling any other witnesses. . . ." He did relate he called the owner of the house where the incident occurred to testify at trial and she was able to point out some "very minor differences. . . ." Indeed, the record shows that at trial the owner of the house testified she had trimmed her lilac bushes "a little bit," and that "generally in the Fall, [she would] mow down the iris bed;" however, she related the shrubbery, trees, bushes and shed were positioned as they were on October 4, 2002, at the time of the crime. Finally, she stated that to the best

of her memory, the videotape "fairly and accurately describe[d] the foliage as it was" at the time of the crime.

■ In our review we note that Movant has failed to identify anyone who could have offered substantially different evidence relative to how the scene looked at the time of the crime versus the time the videotape was taken. Indeed, Movant fails to present any evidence that there were substantial differences between the videotape and the scene as it existed at the time of the crime. Based on the foregoing it is difficult to see how Defense Counsel could have succeeded in excluding the videotape in question. Point denied.

■ Movant's fifth point relied on asserts the motion court erred in finding Movant received effective assistance of counsel because trial counsel "failed to present evidence that officers had searched the area where a bullet or casing should have been found had [Movant] fired at Officer Shanholtzer, but found nothing." Movant maintains that had such evidence been presented, there is a reasonable probability that the outcome of the trial would have been different.

At trial, Officer David Meyer testified that on the evening of the crime he saw other police officers searching for bullets and shell casings with metal detectors, but he did not testify as to whether any shell casings or bullets were located. Officer Stacey Parton testified she was responsible for processing all of the evidence from the scene of the crime but she did not process any bullets or shell casings.

Evidence was presented that police found both .22 rounds and .380 automatic rounds at Movant's home. Movant testified he fired a .380 revolver on the evening

in question.[6] Based on the foregoing, it is our view that there is no reasonable probability that additional evidence relating to the lack of a spent shell casing or bullet would have altered the outcome of Movant's case. Furthermore, the failure to present cumulative evidence is not ineffective assistance of counsel. *State v. Twenter*, 818 S.W.2d 628, 636 (Mo. banc 1991). The motion court did not err in denying Movant's request for relief due to trial counsel's purported failure to introduce evidence that shell casings and bullets were not recovered from the scene of the crime. Point Five is denied.

Movant's sixth and last point of error asserts he "was denied due process of law when the trial [court] considered evidence, including evidence concerning another offense, which was not disclosed to [Movant] and his counsel before sentencing." He maintains the trial court's actions denied him "his right to counsel and to a fair sentencing."

At the sentencing hearing in this matter, a presentence investigation report was prepared and presented to the trial court. The State argued the merits of sentencing Movant to life in prison and referenced Movant's criminal history. There was information presented to the trial court that Movant had a long history of intravenous drug use; that he had abused his wife on ten to twelve occasions during the year in which the crime occurred; that Movant had pulled a gun on a neighbor in the month prior to the crime; that Movant was being investigated for having stolen property; that there had been reports that Movant was a "felon and in possession of numerous firearms;" that he was out on bond at the time of the offense "awaiting trial for assault of an officer in the first degree;" and that he had been previously convicted of three counts of distributing methamphetamine. The trial court specifically asked the State about the status of an unlawful use of a weapon charge pending against Movant as well as the assault of a law enforcement officer case.

At the motion hearing, Judge Henry Westbrook ("Judge Westbrook"), the trial judge in Movant's underlying criminal trial, testified that he heard Movant's case and then pronounced sentence upon him. He testified that at the time he sentenced Movant he was "aware that there was another pending case against him involving an assault on a police officer," in which Movant "allegedly dragged an officer with his vehicle." He stated he was unsure when he learned about the other case, but "many times during pretrial conferences when [they are] setting cases for trial, someone will say, well, he's got a case in another division...." Judge Westbrook testified his sentence in the present case was "influenced by everything [he] kn[e]w at the time of sentencing, so that would be part of it, knowing at least that it was a pending case." He went on to state that the existence of the other case was presumably in the presentence investigation report "and, of course, anything in the [presentence investigation report] is something that [he knows] about and [he] would take into account at sentencing." Judge Westbrook testified that he recalled talking to trial counsel after the sentencing. He testified he told trial counsel he "thought he did a good job" with Movant's trial because he knew Movant "had some objections to the way [trial counsel] handled things...." Judge Westbrook testified,

> I do recall telling [trial counsel] that ... knowing ... that the other case was

---

**6.** At the motion hearing, trial counsel acknowledged that because Movant used a .380 revolver that is why no shell casings were found at the scene.

pending—certainly, in so far as it's part of the [presentence investigation report] and just knowing . . . [about the] actions of [Movant], that . . . subconsciously or directly, I would take that into account.

Judge Westbrook testified that Movant's sentencing was handled by him in the same manner he has handled hundreds of sentencings during his fourteen year career as a judge.

Trial counsel testified he had a conversation with Judge Westbrook after Movant was sentenced and he communicated the substance of that conversation in a letter he sent to Movant.[7] He stated Judge Westbrook had Movant's presentence investigation report at the time of sentencing and those reports always include "a recitation of the defendant's criminal history" "[a]s well as pending criminal cases." Trial counsel also stated the presentence investigation report in the present matter definitely referenced the other assault case Movant had pending against him at the time of sentencing.

■ It is our view Movant was not denied due process of law in this matter. Judge Westbrook testified he was aware of the charges pending against Movant and that Movant's entire criminal history was set out in the presentence investigation report presented to him at the time of sentencing. It has long been held that "[a]ppropriate sentencing requires the fullest information possible concerning the defendant's life and characteristics. Full due process rights are not implicated by the consideration by the sentencing court of these outside factors." *State v. Gilyard,* 979 S.W.2d 138, 143 (Mo. banc 1998) (internal citation omitted). "Sentencing courts have traditionally 'not only taken into consideration a defendant's prior convictions,

but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior.'" *Id.* (quoting *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995)).

■ Additionally, at sentencing the State was well within the law to introduce additional evidence relating to uncharged crimes and the general character of Movant. " 'During the penalty phase, both the [S]tate and the defense may introduce any evidence pertaining to the defendant's character,' including evidence detailing the circumstances of prior convictions, evidence of a defendant's prior unadjudicated criminal conduct, and evidence of the defendant's conduct that occurred subsequent to the crime being adjudicated." *State v. Cole,* 71 S.W.3d 163, 174 (Mo. banc 2002) (quoting *State v. Christeson,* 50 S.W.3d 251, 269 (Mo. banc 2001)).

Further, at the sentencing, Judge Westbrook specifically noted he was sentencing Movant on the basis that he was guilty of the crime charged "and on the basis of the risks to the officers and what went on. . . . ." On these facts, there was no error at sentencing in that the trial court was well within its province to consider the presentence investigation report as well as other outside evidence in determining Movant's sentence. Point Six is denied.

The findings and of fact and conclusions of law of the motion court are affirmed.

---

7. This letter, while referenced at the motion hearing, is not included in the record on appeal to this Court.