Jerome BLANKENSHIP,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. ED 76243.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 20, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 25, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Amy M. Bartholow, Columbia, for appellant.

John Munson Morris, III, Shaun J. Mackelprang, Jefferson City, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

The movant was convicted following a jury trial on one count of involuntary manslaughter, section 565.024 RSMo 1994, and two counts of second degree assault, section 565.060 RSMo 1994. The jury recommended maximum sentences of seven years on each count. Trial counsel filed a timely motion for new trial.

Before the date set for hearing on the motion for new trial and sentencing the movant's trial counsel was indefinitely suspended from practice and he retained another lawyer. The court overruled the motion for new trial and pronounced con-

secutive sentences aggregating fourteen years. The trial judge noted that there were grounds for claiming that trial counsel had been ineffective. Movant's new counsel then filed notice of appeal and proceeded to brief and argue the appeal. The judgment was affirmed by order and memorandum, *State v. Blankenship*, 968 S.W.2d 268 (Mo.App.1998).

The movant then filed a pro se motion under Rule 29.15, asserting that trial counsel was ineffective in several particulars. His counsel on sentencing and appeal filed a timely amended motion[1] and appeared for movant at an evidentiary hearing before a different judge. Several witnesses appeared, including the trial judge. The hearing judge filed findings of fact and conclusions of law overruling the motion. The movant now prosecutes this appeal, represented by new counsel. After reviewing the briefs, the record, and the motion judge's findings and conclusions we are firmly convinced that an error has been made and that there is a reasonable probability that, had the movant's trial counsel performed in accordance with acceptable standards, the result might have been different. We therefore reverse and remand.

The right to counsel as established in the Sixth Amendment and in Article I, Section 18(a) of the constitution of Missouri, connotes representation by competent counsel. If counsel acts incompetently, and the movant establishes prejudice, the conviction may be set aside in postconviction proceedings. The right to competent counsel applies to counsel retained by the defendant as well as to public defenders and other counsel appointed by the court. *Jones v. State*, 748 S.W.2d 878 (Mo.App.1988); *Williams v. State*, 605 S.W.2d 222 (Mo.App.1980).

1. We agree with the movant's counsel that the lawyer who briefed and argued the direct appeal should not prepare the amended 29.15 motion because points could be raised about the inadequacy of appellate counsel, and lawyers cannot be expected to argue their own inadequacy. In view of the conclusion we reach, however, we are not required to consider the point of conflict of interest.

■ Although the trial date had been set weeks in advance, counsel thought that he had an agreement with the prosecutor that the case would be continued. He foolishly neglected to confirm this understanding with the judge prior to the trial. Apparently relying on the expected continuance, he did not interview the expert witness he had retained prior to trial, but rather represented to the court that he had arranged an interview with this witness for 10 a.m. of the very day on which the trial was scheduled to begin.[2] The case was set for pretrial hearing at 8:30 a.m. on January 14, 1997, with trial to begin at 9:00 a.m. Counsel did not appear until 9:10 a.m., when he advised the court that he was not prepared for trial and asked for a continuance.

When the court ruled that the trial would proceed, counsel in his opening statement told the jury that he would produce expert witness Tim Finley at the trial to testify on accident reconstruction. He had not recommended that the defendant-movant take the witness stand and had not prepared him as a witness by asking the questions he proposed to ask and testing his response to anticipated questions on cross examination. Counsel did not get in touch with Finley by telephone until after the trial had begun, and soon ascertained in this interview that there were problems in calling Finley as a witness because he would disagree with some points in counsel's hastily evolved theory of the case, and particularly counsel's reliance on two sets of skid marks in support of anticipated testimony that the defendant braked twice.[3] Counsel then advised the defendant that his only chance lay in his taking the witness stand, thereby allowing the prosecution to show a previous conviction for driving while intoxicated and a speeding ticket the defendant received earlier on the day of the accident. The defendant's testimony lacked coherence and clarity, and proved highly vulnerable to cross examination. The trial judge was uneasy about counsel's lack of preparation, and characterized his conduct at the trial as "fumbling, stumbling and bumbling." The prosecutor understandably criticized the defense in closing argument for failure to present the expert witness as promised in opening statement. Counsel's conduct at the trial fell far short of the standards a client was entitled to expect from a defense lawyer.

■ New trials because of deficiencies in counsel's performance do not come easily. The defendant must demonstrate both that counsel's conduct of the trial was inconsistent with prevailing professional standards, and that the defendant was prejudiced thereby. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (expounding a test adopted by the Supreme Court of Missouri in *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987)). The *Strickland* test imposes on the defendant the burden of proving that there was a "reasonable probability that the result might have been different." The Court also said that prejudice is established by demonstrating that "the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. It is established, furthermore, that prejudice may be established because of errors affecting the sentencing. *See Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ The trial judge found that there was no prejudice. The issue of prejudice requires a pure judgment call, and the trial court's finding of fact is not lightly to

---

**2.** Counsel represented that the prosecutor had told him that he needed a continuance to depose or interview the defense's expert. It appears, however, that the prosecutor had spoken to the expert on the telephone, with the consent of defense counsel.

**3.** Finley told counsel that the two sets of skid marks shown in a photograph were made by different vehicles.

be set aside. Because of the multiple deficiencies in performance as here demonstrated, nevertheless, we conclude, on the basis of the whole record, that the finding was clearly erroneous and that the defendant should have a new trial.

The most serious flaw in counsel's representation was his telling the jury in opening statement that he would produce Finley as an expert witness on accident reconstruction, and then failing to follow through by calling him to the stand. The prosecutor understandably leaped on the defense in closing argument for this omission, thereby impairing defense counsel's and his client's credibility in the eyes of the jury. Counsel had a chance to interview Finley and to call him by reason of the two day continuance offered by the trial judge during the trial, but, after a brief telephone conference with the witness, decided not to call him, negotiating a "deal" with the prosecutor that he would not call Finley and the prosecutor would not call a police officer as a rebuttal witness.

■ The hearing judge brushed counsel's mistakes off as "trial strategy", pointing to the agreement negotiated with the prosecution. The issue cannot be answered so simply. Counsel really had no idea what Finley's testimony would be, prior to the trial, because he had not interviewed him. Had there been a pretrial interview, counsel might not have emphasized the presence of two sets of skid marks, especially in the light of the information furnished by Finley that braking did not necessarily result in skid marks. Finley might have been helpful in his conclusion that the victim's vehicle might have appeared to the defendant and his passenger to be in the defendant's lane, and in several other respects. As it was, however, counsel's decision not to call Finley was the direct result of deficiencies in his own performance. This exercise in adroitness may have been the best solution at the time, but there is clear error in giving it the appellation of trial strategy. Counsel's conduct of the trial deprived the defendant of the right to a planned and coherent trial strategy.

Having bungled the situation regarding his expert witness, counsel was forced to put the defendant on the stand. The direct testimony shows the hand of an experienced lawyer who has not prepared his case. He got the defendant through most of the direct examination, but left him vulnerable to searching cross examination. The prosecutor went through substantially all of the damning evidence, asking "was he (or she) lying?" The defendant was forced to admit to an old DWI conviction, and to having received a speeding ticket on the day of the fatal accident, which information the jury would not otherwise have had. He also placed himself squarely in opposition to other witnesses in testifying to two sets of skid marks made by his car. We doubt that the defendant's testimony made a good impression on the jury. It rather exacerbated the damage from counsel's inadequate preparation.

The *Strickland* and *Sanders* cases set a strict standard. It is difficult to prove that the result of a trial would probably be different, but for counsel's inadequacies. Yet it is not the purpose of *Strickland* to set an impossible standard. *See Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1495, 1503, 146 L.Ed.2d 389 (2000) (referring to "errors that undermine confidence in the fundamental fairness of the ... adjudication....."). We conclude that counsel's performance here fell so far short of acceptable professional standards that defendant was deprived of his constitutional right to competent representation. In finding no prejudice we believe that the trial judge was too prone to apologize for a wholly inadequate performance. Our state has always been a leader in affording defendants the right to counsel, and we cannot take pride in the kind of representation the defendant received here. The defense was a shambles, and the defendant must have a new trial.

We notice the trial judge's sharp criticism of defense counsel's performance expressed at the sentencing hearing and in his testimony in the present case. The prosecutor may have persuaded the judge by his argument that there was no authority to grant a new trial at the time of sentencing. The trial judge's informal comments are not evidence in the case, but they provide some corroboration for our conclusion.

There are numerous cases in which post-conviction relief has been granted because of counsel's failure to interview witnesses or to check out leads. *State v. Butler*, 951 S.W.2d 600 (Mo. banc 1997); *Moore v. State*, 827 S.W.2d 213 (Mo. banc 1992); *Clay v. State*, 954 S.W.2d 344 (Mo.App. 1997). The present case is analogous. The hearing judge rejected motion counsel's argument that trial counsel did not have a theory, finding affirmatively that he did have a theory. This finding was clearly erroneous because counsel's theory, up to the time of trial, connoted expert testimony, which then became unavailable because of counsel's inattention. Whatever theory counsel hastily evolved after he determined that he could not proceed as planned failed to present a satisfactory basis for the defense.

Other issues are raised by the defendant, but there is no need to discuss them further.

The judgment is reversed and the case is remanded with directions to sustain the 29.15 motion and grant the defendant a new trial.

MARY RHODES RUSSELL, C.J., and CRAHAN, J., dissenting.