**James CRAVENS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 23731.**

Missouri Court of Appeals,
Southern District,
Division One.

June 29, 2001.

Amy M. Bartholow, Asst. Atty. Gen., Columbia, Attorney for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan L. Brown, Asst. Atty. Gen., Jefferson City, for Respondent.

SHRUM, Judge.

James Cravens ("Movant") appeals the denial of his motion for post-conviction relief. He seeks relief pursuant to Rule 29.15.[1] After an evidentiary hearing, the motion court entered extensive findings of facts and conclusions of law and denied Movant's claims of ineffective assistance of trial counsel. Because this court is left with a definite, firm impression Movant's trial lawyer was constitutionally ineffective and there is a reasonable probability that, but for the lawyer's ineffectiveness, the trial result would have been different, we find the denial of post-conviction relief clearly erroneous. The judgment on the Rule 29.15 motion is reversed. Movant's convictions and sentences are vacated, and the cause is remanded for a new trial.

Movant was convicted following a jury trial on one count of murder in the second degree, § 565.021.1 (RSMo 1994), and one count of armed criminal action, § 571.015 (RSMo 1994). Movant was sentenced to life imprisonment on the second-degree murder conviction, with a fifteen-year concurrent sentence imposed on the armed criminal action conviction. A detailed statement of facts can be found in Movant's direct appeal of his convictions to this court in *State v. Cravens*, 968 S.W.2d 707 (Mo.App.1998).[2] Upon plain error review, Movant's convictions were affirmed. *Id.* at 713.

Both a *pro se* and amended motion for post-conviction relief were filed pursuant

---

1. All rule references are to Supreme Court Rules (2000), unless otherwise indicated.

2. Reference to particular underlying facts of Movant's trial will be used when needed in this opinion, but a full narration is not required for purposes of this appeal.

to Rule 29.15, wherein Movant alleged his trial counsel was ineffective for failure to consult with and call expert witnesses at his trial and failure to object to expert witness testimony offered by the prosecution. An evidentiary hearing was conducted wherein Movant presented the motion court with testimony from numerous witnesses. Among the witnesses was Dr. Jay Dix ("Dix"), called as an expert in forensic pathology. Upon reviewing photographs of the victim, the autopsy report, and ballistics reports, Dix testified that the victim was shot at a distance of less than one foot.[3] Furthermore when questioned about the expert testimony adduced at trial that the fatal shot was fired from the right and into the right side of the victim's face from a distance of six to eight feet, Dix testified, "That is absolutely not a possibility."

Also testifying at the evidentiary hearing was Donald Smith ("Smith"), who was called as an expert in forensic sciences. Smith testified the shot originated from the victim's left side of her face and was fired at an upward angle from a distance of four inches or less from her face. Smith further testified the victim's left hand was near the trigger area when the gun discharged. Smith also stated the victim's right hand would have been near the muzzle of the gun when it discharged. Moreover, Smith testified that due to the high levels of gunpowder residue found on the victim's hands, it was unlikely that the residue would have been transferred from the Movant's hands to the victim's as the state theorized at trial. Smith also tested the weapon and found it was prone to accidental firing due to the "trigger pull"

being low and the absence of a trigger guard.

In its finding of facts and conclusions of law, the motion court found the following with regard to the above-mentioned testimony:

"Movant next claims that he received ineffective assistance of counsel in that [trial counsel] failed to consult with and call as witnesses a ballistics and forensic pathology expert to testify at trial. The Court should presume that counsel's decision not to call a witness is a matter of trial strategy and is not the basis of an inadequate assistance of counsel claim unless movant clearly establishes otherwise.... However, Dr. Dix indicated that it was important to see the clean wound to make a better determination of the distance of the shot.... Dr. Dix did not examine the body of [victim] only photographs of her blood covered face. On the other hand, Dr. Anderson [state's expert] did examine the body, did make observations about the wound including blowout effect, pellet patterns, and gunpowder residue. He further stated that it was common practice for him to clean the wounds when making these observations and made a determination after observing the injuries that it was not from a close distance. While the failure of trial counsel to consult with ballistics and forensic pathology experts is concerning, movant has failed to show by a preponderance of the evidence that he was prejudiced by trial counsel's failure to do so."

The motion court denied Movant's post-conviction relief.[4] Movant appeals this de-

3. Movant's defense theory at trial was that he entered the trailer and saw the victim with a shotgun. He thought she was going to shoot herself, so he attempted to grab the gun from her, and the gun accidentally discharged, fatally wounding the victim. The prosecution's

expert testified the mortal wound was inflicted from a distance of six to eight feet.

4. Several other witnesses also testified at the evidentiary hearing, most notably trial counsel. Movant included in his Rule 29.15 mo-

nial claiming the court "clearly erred . . . because the record leaves a definite and firm impression that [Movant] was denied effective assistance of counsel . . . in that trial counsel ["Stinson"], failed to act as a reasonably competent attorney . . . by failing to independently investigate and call expert witnesses. . . ." Movant further asserts he was thereby prejudiced because had Stinson done so, the testimony would have "completely supported [Movant's] defense" that the victim was "accidentally shot[.]" Movant claims there is a reasonable probability the outcome of the trial would have been different if this testimony was considered by the jury.[5]

■ Appellate review of a denial of a Rule 29.15 motion is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *State v. Ervin*, 835 S.W.2d 905, 928 (Mo.banc 1992). "The . . . findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Id.* at 928[42].

To prevail on a claim of ineffective assistance of counsel, a movant must show: First, that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80

L.Ed.2d 674 (1984). This prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

■ "It is not enough for the [movant] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. at 2067. However, a movant is not required to show that the error "more likely than not altered the outcome of the case." *Id.* at 693, 104 S.Ct. at 2068. The *Strickland* test falls somewhere between these two extremes, and the issue becomes what effect the evidence would have had if it had been before the jury. *Trimble v. State*, 693 S.W.2d 267, 274 (Mo.App.1985).

■ As to the first part of the *Strickland* test, i.e., the performance prong, we find counsel's inactions fell below the customary skill and diligence of a reasonably competent attorney under similar circumstances.[6] The motion court concluded that it "should presume that counsel's decision not to call a witness is a matter of trial strategy" and not a basis for the ineffectiveness claims. However, the court further stated that counsel's failure to consult these experts was "concerning," and ultimately found movant failed to demonstrate sufficient prejudice.

---

tion several other alleged grounds for relief. The motion court made extensive findings of fact and conclusions of law as to these other asserted grounds and should be commended. However, we find Movant's first point (ineffectiveness in failing to consult and call expert witnesses) to be dispositive. Therefore, we need not address Point II of Movant's appeal.

5. This opinion focuses on the effect the testimony would have upon the conviction of sec-

ond degree murder. The armed criminal action conviction is predicated upon conviction of second degree murder.

6. The State concedes as much in its reply brief when it focuses solely on the prejudice prong of the *Strickland* test. The State does not address any argument to the contrary that counsel's performance was constitutionally deficient.

■ As *Strickland* teaches, "counsel has a duty to make reasonable investigations or to make a *reasonable decision* that makes particular investigations unnecessary." *Strickland* at 691, 104 S.Ct. at 2066 (emphasis added). Counsel's failure to investigate the propriety of obtaining expert witnesses to testify to the distance from which the shot was fired was unreasonable and fell below the customary skill and diligence of a reasonably competent attorney. Movant's entire defense rested upon the fact the shot was fired from a close distance. After examining test-firing patterns, autopsy reports, and the like provided through discovery, counsel testified at the hearing that at the time, "They meant nothing to me and I assumed they meant nothing to the case...."[7] Instead, counsel relied on the assumption that the prosecution did not have any witness who could conclusively testify as to the distance from which the shot was fired. We reiterate counsel here made *no* investigation as to the propriety of independent experts.

■ Counsel cannot make a strategic decision against pursuing a line of investigation when he or she has not yet obtained the facts upon which such a decision could be made. *Kenley v. Armontrout*, 937 F.2d 1298, 1308 (8th Cir.1991) (applying *Strickland* test in habeas corpus proceeding). " 'It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty.' " *Id.* at 1304, n. 5 (*quoting Eldridge v. Atkins*, 665 F.2d 228, 232 (8th Cir.1981)). Counsel lacked the information to make an informed judgment because of inadequacies in his investigation; therefore, any argument as to trial strategy is inappropriate. *Clay v. State*, 954 S.W.2d 344, 349 (Mo.App.1997).

■ To show ineffective assistance by failing to locate and present expert witnesses, Movant has the burden to show such experts existed at the time of trial, that they could have been located through reasonable investigation, and the testimony would have benefitted the defense. *State v. Johnson*, 968 S.W.2d 686, 696–97 (Mo.banc 1998); *State v. Davis*, 814 S.W.2d 593, 603–04 (Mo.banc 1991). This burden has been met. The testimony adduced, if believed, would have supported Movant's assertions the shooting was unintentional, thus negating the intent element of second degree murder. Likewise, if counsel would have made even a perfunctory investigation, he would have uncovered these witnesses at the time of trial. As noted above, counsel's performance was constitutionally deficient as defined under the first prong of the *Strickland* test.

■ The second prong of the *Strickland* analysis focuses on the prejudice to Movant. Movant must show, in the absence of his attorney's unprofessional errors, there is a reasonable probability that the result of his trial would have been different. *Strickland* at 694, 104 S.Ct. at 2068. The motion court concluded Movant failed to meet his burden respecting prejudice. The court decided the testimony from Dix was not of sufficient weight to create a reasonable probability the result would have been different. Apparently, the court based this conclusion on the fact Dix did not examine the body of victim, nor did he have the benefit of making a determination of distance from an

---

7. Counsel further testified at the evidentiary hearing that (1) he should have "explored [the crucial issue] further," (2) he "did not develop [the accident defense]," and (3) he was "too busy" to explore the viability of expert testimony. Although admissions by counsel as to ineffectiveness are not decisive of the issue, we believe counsel's testimony sheds considerable light on our decision. *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir.1992).

examination of a "clean" wound. The motion court concluded the State's expert at trial had these benefits. Implicit in these conclusions is the determination that the jury would not have been affected in rendering a guilty verdict on second degree murder because the State's expert was in a superior position to examine the victim. Likewise, the court obviously took into consideration the additional evidence of guilt adduced at trial in making his conclusion.[8]

■ As presented, the issue is the effect that the expert testimonial evidence would have had on the jury if it had been presented at trial with regard to guilt of second degree murder. We begin with the proposition that a verdict with "overwhelming record support" is less likely to have been affected by counsel's errors than one with weak support. *Strickland* at 696, 104 S.Ct. at 2069. In Movant's direct appeal to this court, his convictions were affirmed upon plain error review wherein it was determined "the case against [Movant] was strong." *Cravens* at 711. This was found to be so even without the expert testimony that the shot was fired from a distance of six to eight feet. Supporting this determination were the following facts: Movant and the victim had been arguing throughout the day, Movant threatened the victim and struck her earlier that day, and shortly before the shot was fired, the victim was heard to scream, "No. No. Don't." *Id.* Movant did not testify at the trial, but his tape-recorded statement made to the police the day after the victim's death was admitted into evidence.

Movant claimed upon entering the trailer, the victim had the gun underneath her chin, and Movant thought she was going to kill herself. Movant then reached for the gun and struggled with the victim to get it away from her, and the gun "went off." *Cravens* at 709.

"Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland* at 695–96, 104 S.Ct. at 2069, 104 S.Ct. 2052. Without the evidence that counsel's errors failed to produce, the jury was left with but one inference to draw: Movant was guilty of knowingly killing the victim. This court is persuaded that had the expert testimony adduced at the evidentiary hearing been before the jury, it may have "alter[ed] the entire evidentiary picture[.]" *Id.* at 696, 104 S.Ct. at 2069; *See also State v. Butler*, 951 S.W.2d 600, 610 (Mo. banc 1997) (finding that "[w]ithout the evidence presented before the motion court, the jury . . . had no reason to question the inferences the state drew from its circumstantial case."); *State v. Barton*, 936 S.W.2d 781, 787 (Mo.banc 1996) (finding "[w]hile the jury certainly might have rejected this [evidence] and found the facts consistent with Barton's guilt, they were not compelled to do so."); *Moore v. State*, 827 S.W.2d 213, 215 (Mo.banc 1992) (finding "though the [evidence] *may* not have changed the result, that very real probability cannot be ignored.").

If the jury in Movant's case had the expert testimony of Dix and Smith before

8. Logic dictates the motion court did not base its conclusions *solely* on the fact the State's expert was in a superior position to examine the victim. If this were the case, then no movant, in the same circumstances as here, could ever overcome the prejudice prong when his counsel was allegedly ineffective for failing to obtain expert testimony *at the time of trial.* The discovery *after trial* of relevant expert testimony is precisely the basis for the ineffectiveness claim. As stated in *Antwine v. Delo*, 54 F.3d 1357, 1366 (8th Cir.1995), "Had counsel been effective, though, the examination would have been made shortly after the offense occurred."

it, the inferences drawn from the evidence certainly may have changed. Significantly, the jury may have believed Movant's claims entirely and disbelieved certain prosecution witnesses. The jury might have inferred that the argument was nothing more than an everyday occurrence and not a prelude to a violent attack in light of the fact that certain prosecution witnesses testified that Movant and the victim argued "every day" or that the arguing was a "common" occurrence. Likewise, the jury may have chosen to disbelieve the witnesses' testimony to the acts prior to the shooting.[9]

Furthermore, the jury might have inferred that the scream from the victim (seconds before the fatal shot was discharged) was in response to Movant struggling to get the gun away from her as argued by counsel in closing. Such an inference would not have been unreasonable in light of the fact that high levels of gunpowder residue were found on the back of the victim's right hand and not on her palm, thus indicating her hand was not raised in a defensive position, but instead was on the gun or in close proximity to it. The State at trial (through expert testimony) theorized the gunpowder residue could have been deposited on the victim's hands up to a distance of four feet or was transferred by Movant to the victim by hand-to-hand contact.[10] At the evidentiary hearing, Smith directly refuted the aforementioned theories stating residue normally is deposited within two feet, but never beyond three feet, and the high levels of residue could not have been transferred by contact from Movant to victim. Instead, Smith testified that the victim's left hand was near the trigger area of the gun and her right hand was in close proximity to the muzzle, and the shot was fired from a distance of four inches from the victim's face. There are numerous other inferences which might have been affected thus altering the entire evidentiary picture, but what has been stated above is sufficient to have undermined our confidence in the outcome.

In making this determination, we have not ignored the State's argument in its reply brief which directs the court's attention to *Kluck v. State*, 30 S.W.3d 872 (Mo. App.2000). In *Kluck*, a movant's Rule 29.15 motion was denied after an evidentiary hearing, and this denial was affirmed on appeal. In pertinent part, the *Kluck* court determined the movant ("Kluck") failed to show sufficient prejudice by trial counsel's failure to obtain expert testimony to present at trial. We find *Kluck* to be distinguishable.

Significantly, Kluck's trial counsel *did obtain* the opinion of one expert and presented those findings at trial. The expert testifying at the evidentiary hearing on the Rule 29.15 motion presented "significantly similar" testimony as that adduced at trial. *Id.* at 876. Therefore, the cumulative evidence would not have benefitted Kluck's defense. That is not our case. Here, the expert testimony would have been wholly beneficial in that it would have corroborat-

---

9. Three primary witnesses for the prosecution were a brother, a sister, and their father's girlfriend. All spent significant amounts of time together and all admitted to discussing the incidents with each other. On cross-examination, the brother was asked, "are you aware that, word for word, the things that you recall that [Movant and victim] said is identical to what [the sister and girlfriend] say?" The brother answered, "I guess they are." Furthermore, the neighbors (father, brother, and sister) were told to "stay out of [Movant's and the victim's] business" and "bad blood" existed between the households.

10. We pause to note that this distance (four feet) that gunpowder residue could be deposited did not comport to that of the expert pathologist's theory of distance (six to eight feet).

ed Movant's assertions and provided alternate inferences to be drawn from the evidence. Without this testimony, the jury was compelled to accept the State's evidence and the inferences drawn therefrom as the truth. In *Kluck*, the jury had the allegedly beneficial evidence before it, albeit through a different expert. Here, Movant did not receive the same assistance. Moreover, in *Kluck*, he admitted to the police he had placed a gun against the victim's head and the gun discharged. Kluck attempted to show at the evidentiary hearing that the victim shot herself. The expert testimony at the hearing presented three possibilities: (1) the victim fired the weapon; (2) she was in close proximity to the weapon when it discharged; or (3) she had held a discharged weapon. A one in three probability is not sufficient to overcome the prejudice prong of the *Strickland* test. *Id.* at 877. In our case, the unequivocal testimony was that the expert testimony at trial was incorrect, and the shot was fired at a close distance. We are not faced with the same type of probabilities as in *Kluck*, and the evidence presented here wholly supported Movant's assertions. For these reasons, *Kluck* is inapposite.

■ It should be stressed that the jury was instructed not only on second degree murder (knowingly), but also on involuntary manslaughter (recklessly). We are persuaded there exists a reasonable probability that the outcome may have been changed, i.e., acquittal, hung jury, or conviction of the lesser offense. *See Lyons v. State*, 39 S.W.3d 32 (Mo.banc 2001) (reviewing a post-conviction claim that there was a reasonable probability the jury would have convicted the appellant of "some lesser degree of homicide."); *Johnson*, 968 S.W.2d 686, 701 (reviewing ineffectiveness in sentencing phase and noting "there is also a possibility of a hung jury ... we do not reach this possibility ..."); *King v. Kemna*, 226 F.3d 981, 987 (8th

Cir.2000) (reviewing habeas corpus petition wherein allegations of ineffectiveness for failure to present evidence regarding ability to deliberate would have negated first degree assault intent (knowing) and would have entitled petitioner to instruction of second degree assault (reckless)). We are not faced with the decision of innocence or guilt as that is not the function of post-conviction relief. *Strickland* and the Missouri decisions following it create a strict standard, but the purpose is not to set an impossible standard. *Blankenship v. State*, 23 S.W.3d 848, 851 (Mo.App.2000). We believe the motion court clearly erred in finding no prejudice resulted to Movant from his counsel's substandard performance. Movant has shown a very reasonable probability that the outcome of his trial would have been different, but for counsel's errors.

The judgment of the motion court is reversed. Movant's convictions and sentences are vacated, and the cause remanded for a new trial.

PARRISH, P.J., and MONTGOMERY, J., concur.