Jeffrey A. WINDER, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 26174.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 22, 2004.

Mark A. Grothoff, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lacey R. Searfoss, Assistant Attorney General, Jefferson City, MO, for respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Jeffrey A. Winder ("Movant") was convicted of three counts of tampering in the first degree, in violation of § 569.080, RSMo 1994, and four counts of receiving stolen property, in violation of 570.080, RSMo 1994. He was sentenced as a prior and persistent offender to seven concurrent eighteen-year terms in the Department of Corrections. Movant's convictions and sentences were affirmed in *State v. Winder,* 50 S.W.3d 395 (Mo.App.2001).

On November 7, 2001, Movant filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15. Following the appointment of counsel, an amended motion to vacate, set aside, or correct the sentence and judgment, along with a request for evidentiary hearing, was filed on February 11, 2002. Within the amended motion, Movant claimed, *inter alia,* that his trial counsel was ineffective for failing to call two witnesses: Bill Bowman and Debbie Winder. An evidentiary hearing was held, and on March 1, 2004, the motion court entered its judgment denying Movant's motion for post-conviction relief, finding that counsel was not ineffective for not calling either Bowman or Winder as witnesses at Movant's trial. Movant appeals.

The complete set of facts may be found in *Winder,* 50 S.W.3d 395; we summarize them here. During March or April of 1998, a reserve police officer, Officer White, with the Crane Police Department noticed some activity and increased traffic at a home that had been vacant for some time; a home that had been owned previously by the officer's grandfather. *Id.* at 397. The Stone County Sheriff's Department advised Officer White to place the house under surveillance, and from mid-May to mid-July 1998, Officer White saw various vehicles parked behind the house that would come and go, but two vehicles, a green pickup and a station wagon, were always present on the property. *Id.*

There was a three-car garage on the property, the lights of which were always on, and people were in the garage with the doors closed, although the garage was not air-conditioned. *Id.* at 397–98. As people entered or exited the garage, Officer White could see vehicles inside. *Id.* at 398. Officer White observed Movant on the premise on at least five occasions. *Id.*

Officer Doucey of the Stone County Sheriff's Department also observed activity on the property, including vehicles parked in front of the garage, and vehicle parts and debris left outside that would later disappear. *Id.* Officer Doucey also saw people working inside the garage with the doors closed and saw Movant near the garage on at least one occasion. *Id.*

On June 7, 1998, Patsy Gobetz' 1987 Chevrolet Silverado pickup was stolen from the driveway of her Springfield, Missouri home. *Id.* Three days later, law

enforcement officials found it approximately two miles from the property described above. *Id.* It was on a trailer in the middle of the road, completely stripped, with evidence that it had been set on fire, although it had not completely burned. *Id.* Paint cans found in Gobetz' pickup were similar to paint cans seen on the property by Officer Doucey in the green pickup. *Id.* Movant's fingerprint was also found inside Gobetz' pickup in an area that would be difficult to reach if the truck were intact. *Id.*

On June 8, 1998, Alfred Conway's fiancée found that the laundry room door of a farmhouse Conway owned had been kicked open. *Id.* Along with some furniture, a small refrigerator, two antique cabinets, and dolls were missing. *Id.*

On June 15 or 16, 1998, the Marleys, owners of a lawn service business, had a pickup and trailer stolen from the backyard of their home. *Id.* at 398–99. The trailer held a commercial lawnmower and various other lawn care equipment. *Id.* Some of the stolen property was found a few days later at a towing service company. *Id.* at 399. The pickup appeared burnt, and various items not belonging to the owners were in the truck, including an envelope addressed to Movant at an address a block from the Marleys' home. *Id.*

On July 1, 1998, Richard Rieschl, Jr. discovered his checkbook and numerous other items were missing from his home. *Id.* Rieschl notified authorities and closed the account, but on July 4, 1998, two men purchased kegs of beer from a liquor store with one of Rieschl's stolen checks. *Id.* On July 8, 1998, Gwenda Carnelison held a garage sale in Springfield at her son's home at which she was selling an antique cherry bedroom set. *Id.* A man who iden-

tified himself as Rieschl approached Carnelison and wrote a check for $825 for the set, and Movant helped the man load the furniture onto a vehicle. *Id.* On the same day, another of Rieschl's checks was used to rent a carpet stretcher; the carpet stretcher was not returned and the check was returned unpaid by the bank. *Id.*

On July 11, 1998, Matthew Hilburn parked his teal green pickup with a "for sale" sign in the parking lot of a shopping center and discovered it was missing two days later. *Id.* On July 12, 1998, Brenda Hayden's red pickup was parked in an area along Highway 160 in Nixa in order that it could be advertised as being for sale. *Id.* The next day the truck was gone, although glass was on the ground where it had been parked. *Id.*

Surveillance of the property continued, and during the late evening of July 12, 1998, and early morning of July 13, 1998, Officer Hammer of the Christian County Sheriff's Department observed Movant exit from the garage talking on a phone and later get into the station wagon with another man and leave. *Id.* at 399–400. About an hour later, Movant returned alone in the station wagon, following a pickup. *Id.* at 400. The pickup, which matched the description of Hayden's red pickup, entered the garage.[1] *Id.*

Officer Clayton of the Stone County Sheriff's Department conducted surveillance of the property later in the morning of July 13, 1998, and by the afternoon could hear the sounds of air tools coming from the garage. *Id.* Officer Clayton saw someone leave in a blue pickup, Movant and another man carrying a teal green truck bed out through one garage door

---

1. Although the property under surveillance was located in Stone County, as a part of his job, Officer Hammer, a member of the Chris- tian County Sheriff's Department, worked on "joint efforts with surrounding counties."

and then in through another, and also saw a red pickup inside the garage. *Id.*

A search warrant was served at the house on the property at 4 p.m., July 13, 1998. *Id.* Movant was present at the house with four other people, two of whom were later released. *Id.* Among the items found were Conway's antique cabinets and refrigerator, Carnelison's antique bedroom set, the carpet stretcher, two kegs from the liquor store, and Rieschl's checkbook. *Id.* Mail addressed to Movant and photos of him in a photo album were also found. *Id.*

In the garage, parts from Gobetz' pickup were found, as well as the essentially intact pickups belonging to Hilburn and Hayden. *Id.* The commercial lawnmower and trailer owned by the Marleys were also found on the property. *Id.* at 401.

Movant was charged with three counts of tampering in the first degree, in violation of § 569.080, RSMo 1994, four counts of receiving stolen property, in violation of § 570.080, RSMo 1994, and one count of possession of a controlled substance, in violation of § 195.202, RSMo 1994. The last count was severed, and the case proceeded to jury trial on the other seven counts. As noted, the jury found Movant guilty on the three counts of tampering in the first degree, in violation of § 569.080, RSMo 1994, and four counts of receiving stolen property, in violation of § 570.080, RSMo 1994. Movant was sentenced as a prior and persistent offender to seven concurrent 18–year terms in the Department of Corrections. He subsequently filed a motion for post-conviction relief pursuant to Rule 29.15 which was denied following an evidentiary hearing.

■ In this appeal of the denial of his motion for post-conviction relief, Movant raises one point in which he contends that the motion court clearly erred in denying the motion because counsel was ineffective for failing to call Bill Bowman and Debbie Winder as witnesses at trial.

In our review of the denial of a post-conviction motion, we are limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Gully v. State*, 81 S.W.3d 651, 654 (Mo.App.2002). Findings of fact and conclusions of law are only clearly erroneous if, after a review of the entire record, we are left with the definite and firm impression that the motion court made a mistake. *Id.* at 654–55.

To prevail on claims of ineffective assistance of counsel, Movant must establish that (1) counsel's conduct fell below an objective standard of reasonableness and (2) counsel's deficient conduct or errors prejudiced Movant's case. *Cravens v. State*, 50 S.W.3d 290, 294 (Mo.App.2001); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under an objective standard of reasonableness, counsel must have "exercise[d] the customary skill and diligence of a reasonably competent attorney under similar circumstances." *Cravens*, 50 S.W.3d at 294. To establish that his case was prejudiced, Movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ Under *Strickland*, a reviewing court may consider the prejudice prong first and stop the inquiry there, if Movant makes an insufficient showing on that prong. *Gully*, 81 S.W.3d at 655. Specifically related to a claim of ineffective assistance of counsel, it is appropriate to consider the strength of other evidence against Movant in determining whether prejudice was suffered by Movant. *Kluck*

*v. State,* 30 S.W.3d 872, 877 (Mo.App.2000). That an error may have had some conceivable effect on the outcome is not sufficient; to determine whether a reasonable probability exists, the totality of the evidence must be considered. *Id.*

 Under most circumstances, the choice of witnesses is a matter of trial strategy and will not support a claim of ineffective assistance of counsel. *Helmig v. State,* 42 S.W.3d 658, 667 (Mo.App.2001). Unless Movant can clearly establish otherwise, a decision to not call a witness to testify at trial is presumed to be a decision of trial strategy and is virtually unchallengeable and will not support the overturning of a conviction based on a claim of ineffective assistance of counsel. *Leisure v. State,* 828 S.W.2d 872, 875 (Mo.banc 1992). Trial counsel may be found ineffective for the failure to locate and call witnesses if Movant can establish (1) counsel knew or should have known of the existence of such witnesses, (2) that the witnesses could have been located through reasonable investigation, (3) that the witnesses would have testified if called, and (4) that the witnesses' testimony would have provided a viable defense for Movant. *Helmig,* 42 S.W.3d at 667.

Prior to trial, Movant identified a list of witnesses he wanted. Among those listed were Bill Bowman, Movant's stepfather, and Debbie Winder, Movant's sister. At some later date, counsel asked Movant to provide counsel with the names and addresses of the witnesses Movant wished to have subpoenaed to testify at trial. Movant responded to counsel with a letter that included a list of names; however, that list did not contain either Bowman's or Debbie's name.[2]

At the evidentiary hearing, counsel testified that he and Movant discussed having Bowman called as a witness on Movant's behalf, but that Movant did not want his stepfather to testify; Movant did not want his stepfather involved. Although counsel did not interview Bowman, counsel did review a report that was prepared by the Highway Patrol fourteen months after Movant's arrest.

In the Highway Patrol report, Bowman indicated that Movant had been at Bowman's house sometime after the Fourth of July weekend to help with a patio, but Bowman was unable to recall the specific day. Bowman testimony's at the evidentiary hearing on the post-conviction motion was that Movant had been at Bowman's home on July 13, 1998 (the date the search warrant was served) from 8:00 or 8:30 a.m. until 3:30 or 3:45 p.m. According to Bowman, Movant left prior to 4:00 p.m. in order to receive a phone call from Debbie, who was incarcerated in Illinois.

Counsel testified at the evidentiary hearing that, in addition to Movant indicating that he did not want to involve his stepfather, had the Highway Patrol report showed that Bowman could recall the specific date Movant "was here as opposed to there," counsel might have considered calling Bowman as a witness. According to Bowman, he attended Movant's trial, but "stayed in the hall pretty much all of the time except right up toward the end." He watched the trial at that point after being told, "that I wasn't going to be called as a witness[.]"

Debbie testified by deposition at the motion hearing. According to Debbie, on July 13, 1998, she was in jail in Illinois and attempted to contact her brother, Movant. Because the phone where Movant was located that day, at Bowman's house, could not take collect calls, Debbie called another brother, whom Debbie asked to contact Movant so that arrangements could be

---

**2.** We use Debbie's first name here simply to lessen any possible confusion as she shares the same last name with Movant. We mean no disrespect.

made for her to reach Movant at a phone that would allow collect phone calls. That phone was at the house at which the search warrant was served. Between 4:34 p.m. and 9:15 p.m., Debbie testified that she called the number at that house four times, but never spoke to Movant or the person phone company records showed as the occupant of the home, Barry Agee. Phone records for Agee showed four collect calls to Agee's number from Illinois during that time period. Debbie indicated during her deposition that had she been called as a witness for Movant's trial, she would have been willing to testify.

 With regard to either Bowman or Debbie, we cannot find that Movant was prejudiced by any alleged error by counsel in failing to call them as witnesses as trial. There is not a reasonable probability that the outcome, given the strength of the other evidence, would have been different. Debbie's testimony regarding the arrangements for Movant to take her collect phone call at the house at which the search warrant was served does not provide a viable defense to the crimes with which Movant was charged. Further, with respect to Bowman testifying, the motion court specifically noted that it found counsel's testimony at the hearing credible that Movant did not want Bowman involved or to testify at trial. It is within the motion court's purview to judge the credibility of those who testify at the evidentiary hearing. *Ayres v. State*, 93 S.W.3d 827, 834 (Mo. App.2002).

The motion court did not clearly err in denying Movant's Rule 29.15 motion, and the motion court's judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.