In the
 Missouri Court of Appeals
 Western District

 
 VICTOR D. VICKERS, JR., 
  WD83989
 Respondent,  OPINION FILED:
 v. 
  AUGUST 3, 2021
 STATE OF MISSOURI, 
 
 Appellant. 
 
 

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable John M. Torrence, Judge

 Before Division One: Alok Ahuja, Presiding Judge, Lisa White Hardwick, Judge,
 Anthony Rex Gabbert, Judge

 The State of Missouri appeals the grant of Victor Vickers’ Rule 29.15 motion after

evidentiary hearing. In one point on appeal, the State claims the motion court erred in finding

Vickers’ trial counsel ineffective in failing to endorse an alibi witness prior to trial. The judgment

is affirmed.

 Facts1

 On August 13, 2011, Victor Vickers hosted a pool party at a water resort in Kansas City,

Missouri. Two of the guests at that party were Edward Ewing and Emily DeMarea. DeMarea was

romantically involved with Vickers at that time.

 1
 Much of the recitation of facts is taken directly from the motion court’s judgment.
 Two days after the pool party, Ewing was murdered inside his home. Ewing's girlfriend,

Kristen Forbush, was also shot but survived her injuries. After the shooters ran out of the house,

Forbush called 911. When the 911 operator asked Forbush if she knew the people who shot her

and her boyfriend, Forbush stated she did not. A law enforcement officer arrived at the home and

also asked Forbush if she knew who the shooters were. Forbush told the officer that there were

three black males, one of them being Garron Briggs, and that the suspects were driving a silver

Pontiac Grand Prix. Vickers was not named as a suspect at that time.

 After she arrived at the hospital, the officer spoke with Forbush a second time. During that

second interview, Forbush told the officer that the silver Pontiac Grand Prix belonged to Kyesia

Ransom. Ransom was Briggs’ girlfriend at the time. Forbush also added that a person whom she

only knew by the name of "V.V." may have been a second of the three suspects, and that she could

not identify the third male. Forbush knew "V.V." to be Briggs’ cousin. Forbush later identified

"V.V." as Victor Vickers.

 Ewing’s family informed law enforcement that Ewing was contemplating ending his

relationship with Forbush because she was cheating on him with Troy Jefferson. Jefferson owned

a white Impala that was never seen again after the shootings. Two days after the shooting, Vickers

learned of the allegations and met with private counsel (“Private Counsel”). Vickers claims that

he told Private Counsel he was home with DeMarea at the time of the crime.

 On September 2, 2011, Vickers was charged by the State of Missouri (“the State”) with

murder in the first degree, assault in the first degree, and two counts of armed criminal action.

Following the indictment, trial dates were scheduled and later continued on three occasions. The

first scheduled trial date was continued at the request of the State and without objection by Vickers.

 2
Two additional trial dates were continued at the request of Vickers. Trial was then scheduled for

September 23, 2013.

 Between the murder charges being filed in 2011 and the September 23, 2013 trial date,

Vickers was apparently indicted for his participation in a drug distribution conspiracy in the U.S.

District Court for the Western District of Missouri. Vickers sought another continuance of the trial

date, but his request was denied. Aware that Vickers would soon be remanded to federal court, the

State dismissed all charges then pending against Vickers on September 10, 2013.

 Following his trial, conviction and sentencing in federal court, Vickers was again charged

by the State of Missouri for the 2011 shooting of Ewing and Forbush. He was charged as acting

alone or in concert with another. The same charges had been filed against Briggs, the co-defendant

in a separate case.

 Vickers was arraigned on August 24, 2015. He was unable to retain private counsel. A

public defender (“Defense Counsel”) was appointed to represent Vickers. Trial was scheduled for

May 16, 2016.

 Briggs’ trial began on December 14, 2015. The same witnesses ultimately testified for the

State in both Briggs’ trial and Vickers’ trial with the exception of an additional witness who

testified for the State in Vickers’ trial. The same witnesses testified for the defense in both Briggs’

trial and Vickers’ trial with the exception of an additional witness, Ransom, who testified for the

defense in Briggs’ trial. Briggs was convicted.

 On May 8, 2016, eight days before the scheduled trial, Defense Counsel filed a motion to

dismiss or exclude evidence alleging a violation of Vickers’ right to a speedy trial. That motion

was overruled, and trial occurred the week of May 16, 2016.

 3
 Following a recess for lunch during jury selection on the first day of trial, Defense Counsel

requested leave to endorse DeMarea as an alibi witness. DeMarea’s existence had not been

disclosed before that time. Defense Counsel stated that she had been made aware of the existence

of DeMarea as a potential witness and her investigator spoke with DeMarea on the phone a few

weeks prior to trial. This conversation occurred prior to Defense Counsel filing a response to the

State’s request for discovery wherein Defense Counsel pled that Vickers did not intend to rely on

the defense of alibi. On the first morning of trial, DeMarea came to the courthouse voluntarily and

spoke with Defense Counsel. That is when Defense Counsel determined she wanted to call

DeMarea as an alibi witness. The State opposed Defense Counsel’s motion. The trial court denied

the motion and disallowed DeMarea’s testimony.2

 The jury found Vickers guilty of murder in the first degree, assault in the first degree, and

two counts of armed criminal action. On October 18, 2016, Vickers was sentenced to life in prison

without parole for murder in the first degree, and 30 years imprisonment for the other three charges.

All sentences were ordered to run concurrently. Vickers’ conviction and sentence were upheld by

this court in State v. Vickers, 560 S.W.3d 3 (Mo. App. W.D. 2018).3

 2
 The court noted the possibility for a later successful Rule 29.15 motion:

 COURT: I'm going to deny the motion. I just think there is nothing that I have heard that indicates
 any basis for the Court to allow this to come out when this is something that was apparently
 developing, at least a couple of weeks ago in some form it was developed. To not get notice of the
 alibi or give notice of the alibi until or really the afternoon of the first day of trial, I think is just
 fundamentally unfair to the State. I'm always concerned about how this plays out post-conviction,
 if there is a post-conviction action. And nevertheless, the State is opposed as I understand it?

 THE STATE: Yes, Judge.

 THE COURT: All right. So I'm not going to allow the notice of alibi to be filed late.
 3
 The exclusion of DeMarea as an alibi witness was upheld on direct appeal. See Vickers, 560 S.W.3d at 20.

 4
 Vickers filed a timely pro se Rule 29.15 motion on February 27, 2019. One of the claims

pertained to Defense Counsel’s failure to investigate and timely endorse DeMarea as an alibi

witness. Appointed post-conviction counsel gave notice that Vickers would proceed only on his

pro-se motion. After an evidentiary hearing, the motion court4 denied all of the claims in the Rule

29.15 motion except for the claim pertaining to the alibi witness. With respect to that claim, the

motion court found that Defense Counsel’s representation fell substantially below that of

reasonably competent counsel and further, that her failure undermined confidence in the outcome

of the trial. It vacated the judgment and ordered a new trial.

 This appeal follows.

 Standard of Review

 “We review a motion court’s ruling on a Rule 29.15 post-conviction motion for the limited

determination of whether the findings of fact and conclusions of law are clearly erroneous.” Hook

v. State, 611 S.W.3d 842, 849 (Mo. App. W.D. 2020). “The motion court’s findings and

conclusions are clearly erroneous only if a review of the entire record leaves this Court with a

definite and firm impression that a mistake has been made.” Id. (internal quotation marks omitted).

 Analysis

 In its sole point on appeal, the State claims the motion court clearly erred in granting

Vickers’ Rule 29.15 motion. It maintains that Defense Counsel was not ineffective for failing to

diligently investigate and timely endorse DeMarea as an alibi witness. The State concludes that

Vickers failed to prove Defense Counsel was ineffective because she did conduct a reasonable

 4
 The same judge served as the trial judge and the motion court judge.

 5
investigation of DeMarea prior to trial and reasonably concluded that DeMarea could not provide

a valid alibi defense.

 “To be entitled to post-conviction relief for ineffective assistance of counsel, [a movant]

must satisfy the two-prong test of Strickland by a preponderance of the evidence.” Id. “First, [a

movant] must show that counsel’s performance was deficient by falling below an objective

standard of reasonableness.” Id. “If counsel’s performance was deficient, [a movant] must then

prove that he was prejudiced by counsel’s deficiency.” Id. “Prejudice occurs when there is a

reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding

would have been different.” Id. (internal quotation marks omitted). “A reasonable probability is

a probability sufficient to undermine confidence in the outcome.” Id. (internal quotation marks

omitted).

 “There is a strong presumption that counsel’s conduct was reasonable and effective.” Id.

“To overcome this presumption, the movant must point to specific acts or omissions of counsel

that, in light of all the circumstances, fell outside the wide range of effective assistance.” Id.

“Strategic choices made after a thorough investigation of the law and the facts are virtually

unchallengeable.” Id. “A movant must satisfy both prongs … to obtain postconviction relief as a

result of ineffective assistance of counsel.” Id. (internal quotation marks omitted).

 “An alibi is [a] defense that places the defendant at the relevant time in a different place

than the scene involved and so removed therefrom as to render it impossible for defendant to be

the guilty party.” Wren v. State, 313 S.W.3d 211, 218 (Mo. App. E.D. 2010) (internal quotation

marks omitted) (emphasis in original).

 To obtain a hearing on a claim that counsel was ineffective for failure to call a
 witness, a movant must plead facts, not refuted by the record, establishing that: (1)
 counsel knew or should have known of the witness's existence; (2) the witness could

 6
 have been located with reasonable investigation; (3) the witness would have
 testified; and (4) the testimony would have provided a viable defense.

White v. State, 383 S.W.3d 58, 62 (Mo. App. E.D. 2012). “A witness’s testimony provides a

movant with a viable defense when it negates an element of the crime for which the movant was

convicted.” Id. “Courts should rarely second-guess counsel’s strategic choices, such as whether

to call a witness to testify, if counsel made the strategic choice after a thorough investigation of

the law and the facts relevant to plausible opinions.” Id. (internal quotation marks omitted)

(emphasis in original). “Thus, counsel must investigate potential witnesses before determining

whether to call the witness to testify.” Id.

 “[C]ounsel has a duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary.” Cravens v. State, 50 S.W.3d 290, 295

(Mo. App. S.D. 2001) (internal quotation marks omitted) (emphasis in original). “Counsel cannot

make a strategic decision against pursuing a line of investigation when he or she has not yet

obtained the facts upon which such a decision could be made.” Id. “It is the duty of the lawyer to

conduct a prompt investigation of the circumstances of the case and explore all avenues leading to

facts relevant to guilt and degree of guilt or penalty.” Id. (internal quotation marks omitted).

 DeMarea testified at the evidentiary hearing that she attempted to contact Defense Counsel

before trial. She asked the investigator if she could speak with Defense Counsel. DeMarea was

told Defense Counsel was busy. DeMarea called back at least one other time but was unable to

talk directly with Defense Counsel.

 DeMarea testified that she spoke with the investigator probably twice, both times over the

phone. She was under the impression that she would be testifying at Vickers’ trial. She came to

 7
court the first day of trial ready to testify. There was never a point that DeMarea refused to

cooperate or was unavailable to be contacted.

 DeMarea testified at the evidentiary hearing that, on August 15, 2011, she met Vickers at

Applebee's after she got off work, then she followed him to his home in Blue Springs, Missouri

and spent the night there. She testified that she stayed at Vickers’ house until the next morning,

Tuesday, August 16, 2011. DeMarea further testified that she and Vickers were in bed sleeping at

1:00 a.m. on August 16, 2011, the actual time of the shootings. DeMarea testified that she told the

investigator “that I was with him on the night of August 15th, all the way through the morning of

August 16th specifically”; she testified that in their conversation, she “used those specific dates.”

 Defense Counsel testified at the evidentiary hearing that she learned of a potential alibi

witness in either late March or early April. The investigator was asked to speak with DeMarea but

did not do so until April 25 even though trial was set for May 16. The investigator reported that

DeMarea would not be a good witness, and Defense Counsel decided to not use an alibi defense.

The investigator’s conversation with DeMarea was not documented other than the date of the call

being put into a database. Once Defense Counsel met DeMarea in person and heard her potential

testimony, Defense Counsel changed her mind about pursuing an alibi defense.

 According to Defense Counsel, DeMarea was initially unable to be certain about the dates

she was with Vickers. That is why the investigator determined she would not be a good witness.

After seeing a picture of the two of them together at the pool party, DeMarea was able to be certain

about the dates. Defense Counsel testified:

 Q. What you remember about [the investigator’s] recitation, because you weren’t
 there, it was not witnessed by anyone else, there’s no documentation, recording,
 anything about this conversation, but [the investigator] tells you that [DeMarea] is
 not sure about the dates?

 8
 A. Yes.

 Q. And then it is not pursued?

 A. Correct.

 Q. So asking her on April 25, 2016, where were you August 16, 2011, she was not
 able to answer that question?

 A. Yes.

 Q. However, when you met with her, eventually, when the trial began, she was
 able to put that date in context because of another event that happened very close
 in time?

 A. Yes.

Defense Counsel further testified:

 Q. Now let me ask you this. Was there any legal strategy in you personally not
 investigating and speaking with the alibi witness in this case?

 A. There was no legal strategy. I was busy, and I had to delegate that task to [the
 investigator]. And I don't do that anymore because of this, yeah.

 Q. And do you agree that ultimately, how you try your case and which witnesses
 you call is up to you?

 A. Yes, absolutely.

 Q. As the lead attorney in this case?

 A. Yes.

 Q. And that in a first degree murder case with a potential viable alibi that it would
 have been better practice to have interviewed this person on your own?

 A. Yes.

 Q. And had made the credibility call on your own?

 A. Yes.

 9
 Q. And that had you done so when you learned about her, that you would have
 potentially had the time to endorse her, produce her for the State and pursue an alibi
 defense in this case?

 A. I think being able to endorse her before the day of trial would have helped --

 Q. Okay.

 A. -- allow her to be able to testify, yes.

 Q. And would you have done things differently?

 A. Yes.

 Q. Do you agree that the reason that the Court prevented you from allowing this
 witness to testify, from pursuing an alibi defense, is because of late disclosure that
 rests on the defense?

 A. Yes.

Defense Counsel stated that the primary defense was misidentification. She agreed that an alibi

defense could have been used in conjunction with misidentification to argue Vickers’ innocence.

Defense Counsel also agreed that, short of the death penalty, there was not a solitary sentence more

serious than what Vickers was facing at trial. A case like Vickers’ case needed to be a priority over

most others.

 The motion court found in relevant part:

 Here, it is undisputed that, at least four weeks before trial, [Defense
 Counsel] was given contact information about a potential alibi witness in the form
 of Emily DeMarea. While the investigator … made a phone call two weeks later
 that did not persuade the investigator that she would be a good witness, DeMarea
 was, in fact, available as an alibi witness, and [Defense Counsel] made no effort to
 pursue the development of the defense until the morning of trial. This Court finds
 and concludes that a reasonably competent attorney under similar circumstances
 would have met with this cooperative witness, made an effort to find corroborating
 details that would support DeMarea’s memory of what happened that night, and put
 the State on notice of the potential alibi defense.
 Instead, [Defense Counsel] made no effort to contact or interview DeMarea
 and actually filed a notice to the State that the Defendant would not be asserting the
 defense of alibi at trial. As a result, on the first day of trial when [Defense Counsel]

 10
 finally realized that she actually had a valid defense of alibi, the testimony was
 excluded because of the inexcusable violation of the discovery rules.
 …
 First, the sole eyewitness connecting Movant to the crimes did not offer
 strong testimony. Movant’s underlying case presented relatively weak eyewitness
 testimony. Moreover, [Defense Counsel] did not even talk to DeMarea. She did
 not evaluate the relative weight of the testimony or whether it was possible to locate
 evidence that would corroborate DeMarea’s memory of events. The investigator
 made what could only be described as a cursory phone call.
 This is clearly not a case, like those cited by the State, where trial counsel
 investigated an alibi witness, concluded that the witness had no value and chose not
 to call the witness. Here, trial counsel chose to call the alibi witness at the very last
 minute, but was unsuccessful because of failing to properly investigate the defense
 and give timely notice to the State of the existence of the witness. By her own
 admission, [Defense Counsel’s] handling of the issues concerning DeMarea had
 nothing to do with trial strategy.
 A reasonably competent criminal defense attorney knows that a quality alibi
 witness does not just fall out of the sky and land in your lap. Investigating a
 potential alibi witness requires meeting with the witness; sitting down with them
 and making an effort to help the witness recall corroborating details. It might be a
 concert ticket or other such event. It could be a significant weather event or a
 particular newsworthy occurrence that would pinpoint a time and corroborate a
 memory. It could even be a family gathering celebrating a birthday, a graduation
 or an anniversary. This Court, based on 20 years of practice and 19 years as a trial
 judge, believes that this is the minimal degree of effort that must go into the
 investigation of an alibi witness. This is especially so when defense counsel is
 dealing with a relatively weak case of Murder in the First Degree (as evidenced
 here by a plea offer from the State of 10 years on Voluntary Manslaughter).
 Unfortunately for all concerned parties, [Defense Counsel] did not come close to
 complying with such a standard of pretrial investigation and representation.
 This Court unavoidably finds that [Defense Counsel] knew of a supportive
 alibi witness for at least 4-6 weeks before the trial setting, failed to diligently pursue
 an investigation of the defense and, in fact, then gave notice to the State that Movant
 would not rely on the defense of alibi. The record is clear that, had DeMarea not
 appeared at the courthouse of her own volition on the first day of the trial, [Defense
 Counsel] would very likely have never even met DeMarea. The Court concludes
 that [Defense Counsel’s] representation fell substantially below that of reasonably
 competent counsel and further, that her failure undermines confidence in the
 outcome of the trial.

The motion court’s findings were not clearly erroneous. Defense Counsel’s failure to talk to

DeMarea was not a matter of strategy. To the contrary, Defense Counsel handles alibi witnesses

differently now as a result of Vickers’ case. DeMarea provided a definite alibi for Vickers.

 11
Moreover, there was no DNA, fingerprint, or other physical evidence linking Vickers to the

shootings. Given a case based on eyewitness identification, a reasonable defense counsel would

have put more effort into developing an alibi defense. This is especially true when the potential

alibi witness is cooperative.5 See, e.g., Gennetten v. State, 96 S.W.3d 143, 151 (Mo. App. W.D.

2003) (“Here, Mr. Gennetten’s trial counsel did not make a reasonable professional investigation

or a reasonable decision not to investigate Dr. Sharp”); Cravens, 50 S.W.3d at 295 (“Counsel

lacked the information to make an informed judgment because of inadequacies in his investigation;

therefore, any argument as to trial strategy is inappropriate”); State v. Hayes, 785 S.W.2d 661, 663

(Mo. App. W.D. 1990) (“[C]ounsel’s omission to call [an] alibi witness … without having

interviewed her and having made a reasoned election not to call her …. fell below the standard of

the customary skill and diligence exercised by a reasonably competent attorney under similar

circumstances”) (internal quotation marks omitted); Perkins-Bey v. State, 735 S.W.2d 170, 172

(Mo. App. E.D. 1987) (“The obvious answer is all reasonable steps to investigate and present

favorable evidence were not taken for the failure of which there is a ‘probability’ the result of the

proceeding would have been different”).

 The State argues that the motion court characterizing the investigator’s phone call to

DeMarea as “cursory” is not supported by sufficient evidence. It focuses on DeMarea’s testimony

that the investigator asked lots of questions. DeMarea also testified that the conversation did not

last long at all. We do not find these two statements to be contradictory. Further, “[w]e will defer

 5
 We are not holding that defense counsel are always required to speak directly with potential witnesses as
opposed to having others from their staff speak with the witnesses. For example, “[o]btaining sworn statements from
potential witnesses who were not eye-witnesses to the crime is a reasonable method of investigation and a reasonable
method for determining trial tactics and strategy.” Phillips v. State, 639 S.W.2d 270, 273 (Mo. App. E.D. 1982). We
merely hold that, under the facts of this case, Defense Counsel rendered ineffective assistance of counsel when she
did not further investigate DeMarea as an alibi witness, but instead relied on her investigator’s “cursory” conversation
with DeMarea.

 12
to the motion court’s determinations of credibility, and the motion court is free to believe all, part,

or none of the witnesses’ testimony.” Tabor v. State, 344 S.W.3d 853, 858 (Mo. App. S.D. 2011).

We also note that Defense Counsel herself testified that the investigator merely asked DeMarea,

almost five years after the shooting, where she was on August 16, 2011, without providing

DeMarea any of the context of surrounding events which would assist her recollection; the circuit

court could rightfully characterize this interview as “cursory.”

 The State also focuses on testimony that DeMarea was initially uncertain about the dates

she was with Vickers. DeMarea testified, however, that she was certain of dates and times on her

very first conversation with the investigator. The State notes that the motion court found that

Defense Counsel should have assisted DeMarea’s with remembering corroborating details. Again,

we do not find those two things to necessarily be in conflict. Even if a witness states she is certain

of dates and times, corroborating details would only make that testimony stronger. Given

DeMarea’s testimony that she told the investigator she was with Vickers specifically on the night

of August 15-16, 2011, Defense Counsel’s failure to follow up with her, or to timely endorse her

as an alibi witness, is inexplicable. Further, even if DeMarea was somewhat vague about the dates,

she was first interviewed more than four and a half years after the shootings. Given the limited

strength of the State’s case, the defense of misidentification, and the presence of a cooperative

witness who wanted to help, the motion court did not clearly err in finding Defense Counsel should

have spoken in detail with DeMarea about her memory of that time.

 The State concedes that, if this court affirms the motion court’s finding that Defense

Counsel’s performance was deficient, the motion court’s conclusion that it was also prejudicial

does not rise to the level of clear error. Thus, we need not discuss prejudice. The motion court’s

findings were not clearly erroneous. The point is denied.

 13
 Conclusion

 The judgment is affirmed.

 Anthony Rex Gabbert, Judge

All concur.

 14